[L.A. No. 29954. In Bank. July 21, 1972.]

ORPHA UNRUH, Plaintiff and Appellant, v.
TRUCK INSURANCE EXCHANGE et al., Defendants and Respondents.

618

**COUNSEL**

Everett E. Demler for Plaintiff and Appellant.

Low & Ball, Remington Low, Raymond Coates and John Wynne Herron as Amici Curiae on behalf of Plaintiff and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz, Sikes, Pinney & Matthew and Stephen A. Cirillo for Defendants and Respondents.

## OPINION

**SULLIVAN, J.**—Plaintiff appeals from separate written orders[1] dismissing her second amended complaint after the court sustained demurrers thereto without leave to amend.

The second amended complaint (hereinafter for convenience referred to as "complaint") names as defendants Truck Insurance Exchange (Truck), Farmers Insurance Group (Farmers), William Baker and Lawrence Marino[2] as well as additional defendants sued by fictitious names. It contains five counts.

### First Count

The *first* count, purporting to state a cause of action on a theory of negligence, alleges in substance as follows: Defendants Truck and Farmers were and are insurance companies authorized to transact workmen's compensation insurance in California. Defendants Baker and Marino were and are "individuals or partners" engaged in the business of investigating industrial accident claims. At all times mentioned defendants and each of them "were the agents, servants and employees of each other, and were acting within the scope of and pursuant to such agency and employment."

On March 31, 1960, plaintiff injured her back while working for an employer insured under the workmen's compensation laws by defendant Truck. Subsequently she underwent four surgeries on her back and her condition deteriorated, causing extreme pain and requiring treatment. At all times mentioned defendants "had knowledge of plaintiff's physical and mental condition and medical history."

About April 10, 1964, defendants, and their employees, acting in the scope of their employment, placed plaintiff under surveillance in Long Beach. Defendant Baker "befriended the plaintiff and did in the City of

[1]The orders were filed the same day and when filed constituted judgments. (Code Civ. Proc., § 581d.)

[2]No reference is made to defendant Marino in either the demurrers or the orders of dismissal.

Long Beach and elsewhere misrepresent his capacity and his intentions toward the plaintiff." On specified dates, for the purpose of obtaining motion pictures of plaintiff, defendants "did entice and cause the plaintiff to conduct herself in a manner beyond her usual and normal physical capabilities . . . ." In particular defendants enticed plaintiff to visit Disneyland with defendant Baker, in the unseen presence of defendant Marino, where Baker caused plaintiff to cross a rope bridge and a barrel bridge and "did wilfully and intentionally violently shake and disturb said bridges and the physical person of the plaintiff, and the defendants did at said place cause the plaintiff to engage in other activities so as to aggravate and injure the plaintiff." These events were filmed by defendant Marino.

Plaintiff did not know at any time that she was under surveillance, that defendant Baker had misrepresented his capacity, or that defendant Marino was photographing her activities. At the instance and invitation of Baker, plaintiff had been caused "to become emotionally interested" in him.

On April 30, 1964, defendants negligently exhibited at a hearing of the Industrial Accident Commission (now the Workmen's Compensation Appeals Board)[3] the motion pictures of plaintiff taken while she was under surveillance. Upon learning of "the ruse and deception" practiced on her by defendants, plaintiff suffered a physical and mental breakdown requiring hospitalization. This breakdown was proximately caused by defendants' negligent exhibition of the films described, and by defendants' negligent failure to properly control their agents and employees "as to the limit, scope and manner of their investigation," and as to "the possible risk of injury to plaintiff therefrom." As a proximate result of the above conduct of defendants, plaintiff sustained "injury to her nervous system and person," in the sum of $500,000 general damages, and special damages for medical and other expenses and wage loss, past and future, in sums to be determined.

### Counts Two to Five

The second, third, and fourth counts, purporting to state causes of action on theories of assault, conspiracy and intentional infliction of emotional distress, incorporate by reference the allegations of the first count. The *second* count alleges that at the times described above defendants intentionally and wilfully assaulted and battered plaintiff. The *third* count alleges that defendants conspired to perform the acts described. The *fourth* count alleges that defendants "wilfully, wantonly and intentionally" inflicted emotional distress on plaintiff by the acts alleged. The *fifth* count, incorporating by reference the allegations of the preceding four counts, alleges

[3]The Workmen's Compensation Appeals Board is hereafter referred to as "Board."

that said acts of the defendants, and each of them, were wilful and malicious, whereby plaintiff seeks punitive damages of $2,000,000.

Defendants (except Marino—see fn. 2, *ante*) demurred to the complaint asserting that the complaint and each count thereof failed to state facts sufficient to constitute a cause of action, in that it appeared on the face of the complaint that the court had no jurisdiction over the subject matter of the action, as the Board had and continues to have exclusive jurisdiction. As previously noted, the court sustained the demurrers without leave to amend and dismissed the action. This appeal followed.

At the outset, we dispose of two procedural questions raised by plaintiff. First, she contends that the court erred in ordering her to file the second amended complaint, thereby restoring defendants' opportunity to demur. Her point is that defendants had waived their right to demur to the *first* amended complaint and by ordering her to file a new complaint the court deprived her of "immunity from attack by demurrer." ▮ It suffices merely to note that the grounds of the demurrers are that the complaint fails to state facts sufficient to constitute a cause of action and that the court lacked jurisdiction over the subject-matter of the action. These grounds for demurrer are not waivable and may even be asserted for the first time on appeal. (Code Civ. Proc., § 434; see *Horacek* v. *Smith* (1948) 33 Cal.2d 186, 191 [199 P.2d 929]; *Griffin* v. *Griffin* (1953) 122 Cal.App.2d 92, 101 [264 P.2d 167]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 819, p. 2427.) Since these objections can be raised at any time at the trial or on appeal (3 Witkin, *op. cit. supra*, Pleading, § 808, pp. 2418-2419), the court in no sense "restored" an opportunity which had been irrevocably lost. The court's purpose was to have the first amended complaint and subsequent amendments thereto incorporated into one document. The order did not constitute an abuse of discretion.

Second, plaintiff contends that the court, in its minute order sustaining the demurrers, improperly took judicial notice of certain determinations previously made by a trial referee of the Board when plaintiff was seeking workmen's compensation benefits for her back injury and its aggravations.[4] She urges that she was not given sufficient notice under Evidence

---

[4]The pertinent part of the court's order follows: "For purposes of demurrer, this Court takes judicial notice of the contents of its file and the proceedings heretofore had herein. In the Referee's 'report on petition for reconsideration' we find 'It has been decided by said award [of August 20, 1964] that applicant's psychiatric disturbance following the hearing of April 30, 1964 was related to the injury' and in the said Referee's 'Report on Supplemental Findings . . .' 'There can be no reasonable doubt that applicant's reaction to the events of the hearing of April 30, 1964 was directly related to the injury in such manner as to be compensable.'"

Code section 453,[5] that such matters should be judicially noticed and that she did not have a "reasonable opportunity . . . to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed." (Evid. Code, § 455, subd. (a).)

Defendants did not at any time make the request specified by section 453. Nevertheless, at the hearing on the demurrers, defendants' attorney did say that workmen's compensation had been awarded plaintiff, as the court file would reveal. The court indicated that counsel should make an appropriate request that judicial notice be taken.[6]

■ It is true that the court judicially noticed the referee's findings and award, without a specific request by defendants. In prior proceedings, however, plaintiff herself, in opposing a motion to dismiss, had incorporated the Board's file *in toto* and had given a detailed summary of its entries. Indeed, her counsel had placed in the record the specific documents from which the court made excerpts for its order quoted above. It is clear that plaintiff's counsel had knowledge of the particular matters of which the court ultimately took judicial notice and had ample opportunity beforehand to object to the court's action. While the court may not have complied with sections 453 and 455 in a strict sense, we cannot say that any resulting error constituted a "miscarriage of justice" (Cal. Const., art. VI, § 13).

We turn to the merits. The crucial question before us is whether an industrially injured employee can maintain against the workmen's compensation insurance carrier of her employer a common law action for damages for the negligent or intentional acts of such carrier. Plaintiff's appeal is

---

[5]Section 453 of the Evidence Code provides: "The trial court shall take judicial notice of any matter specified in Section 452 if a party requests it and: [Par.] (a) Gives each adverse party sufficient notice of the requests, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and [Par.] (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter."

Section 431.5 of the Code of Civil Procedure provides: "When the ground of demurrer is based on a matter of which the court may take judicial notice pursuant to Sections 452 or 453 of the Evidence Code, such matter must be specified in the demurrer, or in the supporting points and authorities for the purpose of invoking such notice, except as the court may otherwise permit."

[6]"You should ask the Court to take judicial notice by furnishing me with the information, if that element was present, by which I recognized there was a hearing, that these pictures were produced; that the Referee had all that information before he made the determination, before the C&R was approved."

grounded on the contention that Labor Code sections 3850[7] and 3852,[8] properly construed, do not compel a conclusion of exclusive jurisdiction in the Board and, therefore, permit such an action. Defendants, on the other hand, maintain that the Board does have exclusive jurisdiction and that plaintiff made a binding election to invoke it. They assert that the Board's determination of compensability was res judicata as to the cause of action alleged before the superior court, which therefore had no jurisdiction to proceed. (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 83 [293 P.2d 18].) As will appear, we conclude that the Board had exclusive jurisdiction as to plaintiff's count based on a theory of negligence but not as to those counts based on the carrier's intentional torts.

We first examine count one of the complaint. Section 3601 of the Labor Code provides in pertinent part: "Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against the employer . . . ." Thus, it is settled that the Board has exclusive jurisdiction to determine the extent of recovery for an injury suffered when the "conditions of compensation concur." (Lab. Code, § 3600; *Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d 76, 83.) Conversely the employer is immunized under sections 3600 and 3601 from an action at law brought by the employee for such injury.

Section 3300[9] defines the word "employer"; it is evident that such definition does not include an insurer. Thus, if the insurer is to be invested with the employer's immunity under section 3601, that immunity is to be derived from sections 3850 and 3852. (Cf. *State Comp. Ins. Fund* v. *Superior Court (Breceda)* (1965) 237 Cal.App.2d 416, 419-420 [46 Cal.

---

[7]Section 3850 of the Labor Code provides: "As used in this chapter [i.e., ch. 5, "Subrogation of Employer," §§ 3850-3864], (a) 'Employee' includes the person injured and any other person to whom a claim accrues by reason of the injury or death of the former. [Par.] (b) 'Employer' includes insurer as defined in this division."
 Hereafter, unless otherwise indicated, all section references are to the Labor Code.

[8]Section 3852 provides: "The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay salary in lieu of compensation, may likewise make a claim or bring an action against such third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he was liable including all salary, wage, pension, or other emolument paid to the employee or to his dependents."

[9]Section 3300 provides: "As used in this division, 'employer' means: [Par.] (a) The State and every State agency. [Par.] (b) Each county, city, district, and all public and quasi public corporations and public agencies therein. [Par.] (c) Every person including any public service corporation, which has any natural person in service. [Par.] (d) The legal representative of any deceased employer."

Rptr. 891].) Those sections, which fall within chapter 5, part 1, division 4, of the Labor Code, entitled "Subrogation of Employer," allow an employee to file an action at law for damages proximately resulting from his industrial injury against "any person *other* than the employer." (Italics added.) (See fns. 7 and 8, *ante.*) However, since "employer" is for these purposes defined by section 3850 to *include* an insurer, a literal reading of the section would negate an action at law against the insurer as a third party under section 3852. In other words, the insurer would retain immunity from lawsuit as the *"alter ego"* of the employer.

Plaintiff argues that when a compensation insurance carrier negligently fails to control the scope and manner of a nonmedical investigation of an industrial accident claim, it changes its proper role as delineated by sections 3850 and 3852 and becomes a "person other than the employer" rather than the *alter ego* of the employer. This change of personality would permit the injured employee to invoke the jurisdiction of the superior court. Defendants, on the other hand, analogize to cases in which compensation insurers have been held to retain "employer" immunity from an action at law for other types of alleged negligence. (*Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230 [60 P.2d 276] (negligent medical treatment); *Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731 [342 P.2d 976] (negligent delay in providing medical care); *Hazelwerdt* v. *Industrial Indem. Exchange* (1958) 157 Cal.App.2d 759 [321 P.2d 831] (negligence and conspiracy in providing medical treatment); *State Comp. Ins. Fund* v. *Superior Court (Breceda), supra,* 237 Cal.App.2d 416 (negligent safety inspection of employer's premises); *Burns* v. *State Compensation Ins. Fund* (1968) 265 Cal.App.2d 98 [71 Cal.Rptr. 326] (negligent safety inspection of employer's premises).) Plaintiff counters with the argument that the policy implications of these cases are distinguishable from the insurer's role in the instant case. The precise question which the parties pose is one of first impression in California.

It is convenient to note at this point that this issue before us pertains only to defendant Truck, the sole compensation carrier of plaintiff's employer. Defendants Farmers and Wishman, its agents, are clearly not the employer's insurers and at least on the face of the complaint[10] are subject to civil suit as third parties. Defendant Baker, the investigator employed by Truck, is also subject to civil suit as a third party regardless of Truck's independent liability as principal (*James* v. *Marinship Corp.* (1944) 25 Cal.2d 721,

---

[10]Actually defendants advise us in their brief that Farmers is not a legal entity of any type, that it is a designation for a group of companies which includes Truck, and that through inadvertence of defense counsel an appearance was filed for Farmers as well as Truck. These matters may be corrected in the trial court on remand.

742-743 [155 P.2d 329, 160 A.L.R. 900]).[11] ■ We, therefore, conclude that the above defendants, other than defendant Truck, are persons "other than the employer" within the meaning of section 3852, against whom plaintiff was entitled to bring an action for damages, and that the trial court erred in sustaining the demurrers on the ground of lack of jurisdiction with respect to those defendants.

Having disposed of this appeal as to all other parties defendant, we now inquire whether the superior court's jurisdiction over the controversy extended to defendant Truck, the employer's insurer. In *Fitzpatrick* v. *Fidelity & Casualty Co., supra,* 7 Cal.2d 230, an action for damages was brought against the employer's compensation carrier for the wrongful death of an injured employee allegedly caused by negligent medical treatment by the carrier's doctor. We held that "the aggravation of an industrial injury or the infliction of a new injury resulting from its treatment or examination are compensable under the provisions of the Workmen's Compensation Act and, therefore, within the exclusive cognizance of the Industrial Accident Commission." (*Id.* at p. 232.) Although we recognized that the doctor was liable for his own acts, we upheld the sustaining of a demurrer by the carrier on the rationale that "the superior court may not entertain an action for damages against the employer or his insurance carrier . . . ." (*Id.* at p. 233.)

Two Court of Appeal decisions—*Hazelwerdt* v. *Industrial Indem. Exchange, supra,* 157 Cal.App.2d 759 and *Noe* v. *Travelers Ins. Co., supra,* 172 Cal.App.2d 731—applied *Fitzpatrick* to substantially similar facts. In *Hazelwerdt* the complaint asserted that the insurer refused to provide medical and hospital care and conspired with its doctor in so refusing; in *Noe* the complaint alleged that the insurer had negligently delayed in providing medical treatment for an industrial injury. In each case it was held that the alleged activities did not render the insurer a third party under section 3852. In each case, the appellate court decided that the employer was precluded from bringing a common law action for damages against the carrier because the latter even though acting negligently, had not stepped out of its proper role as an insurer in the compensation scheme.

In *State Comp. Ins. Fund* v. *Superior Court (Breceda), supra,* 237 Cal. App.2d 416, it was held that an employee sustaining an industrial injury could not maintain a common law action for damages against his em-

---

[11]This conclusion is buttressed by the specific language in the line of cases headed by *Fitzpatrick* v. *Fidelity & Casualty Co., supra,* 7 Cal.2d 230, which have held an insurance *doctor* independently liable for malpractice in a civil action even though the sole remedy *as against the insurance carrier* for the alleged negligence was before the Board.

ployer's insurance carrier for the latter's negligence in making safety inspections at the employer's plant. The court reasoned that the carrier was not "really stepping from its role as insurer" but was "performing a service which is inextricably interwoven with its status as insurer . . . ." (*Id.* at p. 424.) In other words, the rendering of an inspection service, somewhat like the furnishing of medical treatment, entailed the performance of a function beneficial to the employee. The insurer was therefore acting in its normal role as an insurer, within the compass of sections 3850 and 3852; it did not step beyond such role so as to become a third party. This reasoning was followed on similar facts in *Burns* v. *State Compensation Ins. Fund, supra,* 265 Cal.App.2d 98, 101-102.

█ To summarize, it is settled in California that an insurer is still acting within its proper role in the compensation scheme, and thus may not be sued at law as a "person other than the employer" under section 3852, when it provides negligent medical treatment for a compensable injury or when it negligently inspects the employer's premises. We must decide whether the same result should obtain when, as in the case at bench, an insurer negligently fails to control its agents and employees as to the "limit, scope and manner" of its nonmedical investigation of an injured employee's claim for compensation.

█ We first observe that the investigation of claims, when properly performed, is an important function of the insurer in the workmen's compensation scheme. Like safety inspections or the providing of medical care, such nonmedical investigation constitutes a service "inextricably interwoven" with the insurer's status. In our system of compensation, no one else is in a better position, with resources at command, to detect fraudulent, or grossly exaggerated claims for benefits. No other party has the financial motivation for avoiding liability for spurious claims, since the insurer is ordinarily substituted for the employer and assumes his compensation liability. (Lab. Code, §§ 3755-3758.) The detection of spurious and unfounded claims benefits the workmen's compensation scheme by excluding them from the already heavily burdened administrative process of the Board.

In the instant case, plaintiff contends that the covert investigation during April 1964 went far beyond its permissible scope and that defendant Baker fraudulently enticed plaintiff to Disneyland, where he inveigled her into undertaking various activities of which his associate took motion pictures. Thus by analogy to our reasoning in *Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83 [95 Cal.Rptr. 447, 485 P.2d 799], she urges that, by negligently failing to control the investigation, Truck was acting beyond its normal role as insurer, and in effect became a third party within

the meaning of Labor Code sections 3850 and 3852. It is plaintiff's conclusion that we cannot accept.

First, as has been discussed, the insurer's role in carrying out the non-medical investigation of claims is as important to the compensation system as its role in providing medical services and performing safety inspections. As the cases just discussed point out, the *nature* of the insurer's role is not changed merely because its usual functions may have been performed negligently. A holding to the contrary might significantly deter insurance companies from providing workmen's compensation insurance and seriously impair a compensation scheme designed for the benefit of the workman. As the court declared in *Noe*: "[W]e must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. . . . The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified." (*Noe* v. *Travelers Ins. Co., supra,* 172 Cal.App.2d at p. 737.) A negligent investigation of an employee's claim may well be an aberration in the carrier's normal activities, but when it does have a harmful effect on the employee, we see no reason why it cannot be treated by the Board as a compensable aggravation of the original injury, if the evidence so warrants. This result provides for prompt and effective relief within the compensation scheme without disturbing the administrative process. We can find no justification either in statutory or policy considerations for treating the negligent carrier as no longer acting as a carrier but rather as a third party.

We recognize that while the basic theory of count one is negligence, its underlying allegations assert deceitful conduct on the part of Baker. In *Redner* v. *Workmen's Comp. Appeals Bd., supra,* 5 Cal.3d 83, we recently set forth our views on the reprehensible character of such conduct when engaged in by carriers and their private investigators. Without qualifying *Redner* in any way, we conclude that what we there said cannot transform the negligence count into something the pleader did not intend. As will appear, the reasoning of *Redner does* apply to our consideration of the counts which assert intentional torts.

Nor, contrary to plaintiff's claim, does the fraudulent nature of the investigation itself change the role of the insurer, for purposes of the negligence count, on the basis of any reasoning analogous to the "dual capacity" rationale of *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8]. In that case plaintiff, a nurse, sustained an industrial injury while employed by the defendant, a chiropractor. Although he carried workmen's compensation

insurance, the defendant and another chiropractor employed by him, undertook personally to treat the plaintiff for the injury and, as it was found, did so negligently. The court upheld a recovery in an action for malpractice, reasoning that in treating the plaintiff, the defendant was acting as an attending doctor rather than as an employer and that " 'the employer-doctor is "a person other than the employer" within the meaning of section 3852 of the Labor Code . . . .' " (*Id.* at p. 793.) We concluded that to consider the defendant a " 'dual personality' " was " 'realistic and not legalistic.' " (*Id.*)

However, it *would* be unrealistic in the instant case to deem the insurer to have a dual personality merely on the ground of the negligence count herein. The *Noe, Hazelwerdt,* and *Breceda* courts all found *Duprey* v. *Shane* reasoning to be inapplicable to the negligence alleged on the part of the respective insurers.[12] We have deemed the reasoning of those cases to be controlling with respect to the negligence count, and we see no reason to repeat their logic here concerning the *Duprey* claim.

Finally, the first count cannot survive demurrer on the authority of *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386 [343 P.2d 787], cited by plaintiff in support of the proposition that fraud provides an exception to the exclusive remedy rule of Labor Code sections 3600 and 3601. In *Ramey* the employer and a third party tortfeasor conspired to conceal from the industrially injured employee the fact that the latter had a common law action for damages against the third party for the injury. The court held that sections 3600 and 3601 did not preclude a civil action against the employer since the "fraud injury" was distinct from the earlier physical injury and did not arise out of or in the course of the employment, observing that "the Legislature never intended that an employer's fraud was a risk of employment." (173 Cal.App.2d at pp. 402-403.) The count we are now examining is distinguishable since its gravamen is not fraud but negligence which, as we have explained, has a relationship to the original injury.

We conclude that the trial court did not err in sustaining Truck's demurrer to the first count.

We turn now to consider the legal sufficiency of the second and fourth counts which allege intentional torts: assault and battery and intentional infliction of emotional distress, respectively. It has been held that an employee cannot bring an action at law against his *employer* for damages for

---

[12]*Noe* v. *Travelers Ins. Co., supra,* 172 Cal.App.2d at page 736; *Hazelwerdt* v. *Industrial Indem. Exchange, supra,* 157 Cal.App.2d at pages 765-766; *Breceda, supra,* 237 Cal.App.2d at pages 424-425.

injuries intentionally inflicted by the employer upon the employee and incurred by the latter in the course of the employment. (*Azevedo* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 370, 376-377 [52 Cal.Rptr. 283]; see *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 458-460 [70 Cal. Rptr. 710].) ▪ But, as already noted, the "exclusive remedy" provisions of section 3601 nowhere extend the employer's immunity to cover the compensation insurer. We must decide whether the carrier which commits an intentional tort becomes a "person other than the employer."

We begin by observing that the rationale of the *Noe-Hazelwerdt-Breceda* line of cases, which we found persuasive in reaching our conclusion as to the first count, by its very nature is not persuasive here. Those cases spoke in the context of the insurer's *negligence*. We found them compelling in this context, reasoning as to the first count that the insurer, although negligent, was still acting *as an insurer*. We felt that the clear purpose of section 3850 should not be overridden by the "third party" policy statement of section 3852.

▪ However, we are unable to conclude that a compensation insurer remains within its proper role as such, when, as in the instant case, through its agents or others employed by it, such insurer intentionally embarks upon a deceitful course of conduct in its investigations which causes injury to the subject of the investigation. We cannot give our approval to such misconduct which tramples upon the employee's rights, by deeming it no more than the normal behavior of the insurer. In *Redner* v. *Workmen's Comp. Appeals Bd., supra,* 5 Cal.3d 83, 95, concerning similar investigatory conduct of a compensation carrier, we said: "Evidence obtained by fraud and deceit in violation of the rights of the applicant, however, is not 'best calculated to ascertain the substantial rights of the parties and carry out *justly* the *spirit* and provisions' of the workmen's compensation laws. The high purposes of the compensation law should not be perverted by resort to evidence perfidiously procured." (Original italics.) Our condemnation in *Redner* leaves no doubt that such conduct goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker. (Lab. Code, § 3202; see *Pacific Emp. Ins. Co.* v. *Ind. Acc. Com.* (1945) 26 Cal.2d 286, 288-289 [158 P.2d 9, 159 A.L.R. 313].) A deceitful investigation, in place of an honest one, frustrates the laudable objectives of the workmen's compensation law. Permitting the employee to maintain an action at law for the insurer's intentional torts will subserve these objectives but at the same time will not discourage the insurer from fulfilling its proper role in the compensation scheme.

We thus conclude that the second and fourth counts of the complaint state facts sufficient to constitute a cause of action against Truck as a

"person other than the employer" within the meaning of section 3852, and that the trial court erred in sustaining Truck's demurrer to those counts.

We next take up the third count, which, after incorporating the first count, alleged that defendants conspired to perform the acts therein described.

■ The gist of an action charging civil conspiracy is not the conspiracy but the damages suffered. (*Mox Incorporated* v. *Woods* (1927) 202 Cal. 675, 677 [262 P. 302]; *Bowman* v. *Wohlke* (1913) 166 Cal. 121, 125 [135 P. 37]; *Herron* v. *Hughes* (1864) 25 Cal. 555, 560.) A civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage. (*Mox Incorporated* v. *Woods, supra; Herron* v. *Hughes, supra.*) This court stated in *Mox:* "In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (202 Cal. at pp. 677-678.) As Witkin puts it: "The labeling of an action as 'complaint for conspiracy to defraud' or conspiracy to commit some other tort is misleading. Conspiracy (the agreement) is ordinarily not actionable by itself. The cause of action arises out of some wrongful act committed by one or more of the conspirators, and if such a wrongful act is set forth the conspiracy averment is unnecessary to the statement of a cause of action." (3 Witkin, *op. cit. supra,* Pleading, § § 773-775, at pp. 2389-2391.) To state a cause of action for conspiracy the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. (*Mox Incorporated* v. *Woods, supra; Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 488 [110 P.2d 396]; see *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64-65 [35 Cal.Rptr. 652]; Witkin, *op. cit. supra,* Pleading, § 774, p. 2390.)

In *Hazelwerdt* v. *Industrial Indem. Exchange, supra,* 157 Cal.App.2d 759, 763, which, as we have explained, dealt with the failure of an insurer to provide an industrially injured employee with medical care, the court rejected a contention that the allegations of a conspiracy in that case were sufficient to take the case outside the exclusive jurisdiction of the Industrial Accident Commission and entitle the employee to bring a civil action against the insurance carrier. The court correctly observed: "The allegations of conspiracy do not alter the nature of defendant's alleged acts and omissions. [Fn. omitted.] Whether or not a conspiracy existed, the wrong of which plaintiff complains is the defendant's failure to provide him with the required care." (*Id.* at p. 763.)

In the instant case, the third count incorporates only the allegations of the first count which is grounded on negligence. So far as defendant Truck is concerned, the third count adds nothing to the acts alleged in the first count, unless they themselves state a civil wrong. The third count, like the first count, must succumb to Truck's demurrer.

The fifth count, by incorporating the allegations of the first four counts, merely sets forth a claim of punitive damages with respect to each one. "Malice is properly pleaded by alleging the wrongful motive, intent or purpose." (3 Witkin, *op. cit. supra*, Pleading, § 766, at p. 2383.) A general allegation of such intent is sufficient to support a claim for exemplary damages. (3 Witkin, *op. cit. supra*, Pleading, § 769, p. 2385.) It is clear from what we have said that such a claim is properly assertible in conjunction with the second and fourth counts herein, although not with the first and third counts which allege mere negligence. (*McDonnell* v. *American Trust Co.* (1955) 130 Cal.App.2d 296, 299-301 [279 P.2d 138].) We conclude that the court erred in sustaining Truck's demurrer to the fifth count.

In summary, then, we hold that the second, fourth and fifth counts of the complaint state facts sufficient to constitute a cause of action against defendant Truck.

However, Truck contends that the superior court does not have jurisdiction of plaintiff's action on the ground that the Board had exclusive jurisdiction to grant relief. It is argued that the Board made an award[13] to plaintiff which covered the very injuries stemming from the April 1964

---

[13]Pursuant to applicable law (Evid. Code, §§ 452, subds. (c) and (d), 459, subds. (a) and (b)) as well as stipulation of the parties at oral argument, we take judicial notice of the record of the proceedings before the Board, which is part of the record on appeal. Such administrative record discloses that on December 13, 1963 the trial referee found that plaintiff had suffered temporary disability for broken periods, was entitled to reimbursement for certain medical expenses, and was in need of further medical care, including psychiatric treatment. The referee ordered an award accordingly. On August 20, 1964, the referee made supplemental findings and award, and denied defendants' petition to terminate liability. As noted in the trial court's minute order, one of these findings was " 'that applicant's reaction to the events of the hearing of April 30, 1964, was directly related to the injury in such manner as to be compensable.' " On April 5, 1965, the referee made further supplemental findings and award. The employer and its carrier, Truck, filed a petition for reconsideration. The referee's report on petition for reconsideration noted, inter alia, that "[i]t has been decided by said Award [i.e., of August 20, 1964] that applicant's psychiatric disturbance following the hearing of April 30, 1964 was related to the injury." The referee also stated that "[t]he psychiatric problem did not really begin until after April 30, 1964." On May 4, 1965, the Board denied the petition for reconsideration on the recommendation of the referee, stating "[w]e agree with the Referee's reasoning and conclusion [in his report, *supra*] and adopt the same as our own."

events that are the subject of the case at bench, and thus that the Board made a final determination of workmen's compensation coverage and of jurisdiction to grant plaintiff relief. Relying on *Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d 76, defendant urges that this determination is res judicata on the issue of jurisdiction. In view of our foregoing conclusions, we consider this contention only as to the second, fourth, and fifth counts which survive demurrer. We have concluded that it has no merit.

"The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." (*Bernhard* v. *Bank of America* (1942) 19 Cal. 2d 807, 810 [122 P.2d 892]; see also *Martin* v. *Martin* (1970) 2 Cal.3d 752, 758 [87 Cal.Rptr. 526, 470 P.2d 662].) We have stated on a number of occasions that the final determinations of the Board, like those of the superior court, are "res judicata in all subsequent proceedings, including court actions, *between the same parties* or those privy to them." (*Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d at p. 83; italics added; *French* v. *Rishell* (1953) 40 Cal.2d 477, 479-480 [254 P.2d 26]; *Duprey* v. *Shane, supra,* 39 Cal.2d 781, 790.)

In *Scott* we considered the application of res judicata to a cause of action asserted, as here, in two tribunals, the superior court and the Board. We pointed out that "the two tribunals involved . . . do *not* have concurrent jurisdiction over the whole of the controversy, and one of them will be without jurisdiction to grant any relief whatsoever, depending upon whether or not the injuries were suffered within the course and scope of an employment relationship and so covered by the workmen's compensation laws. In other words, as already indicated, the only point of concurrent jurisdiction of the two tribunals appears to be *jurisdiction to determine jurisdiction*; jurisdiction once determined will be exclusive, not concurrent. [Citations.] If at the time of the accident there was no workmen's compensation coverage, then the commission is without jurisdiction to grant relief, and if there was such coverage then the superior court is without jurisdiction and must leave the parties to pursue their remedies before the commission." (*Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d at pp. 82-83; original italics.) We concluded that "if there is a final determination as to the matter of coverage (i.e., of jurisdiction) in either the commission or the superior court proceedings, such determination will be res judicata in subsequent proceedings before the other tribunal between the same parties or those privy to them." (*Id.* at p. 83.)

Applying these principles to the instant case, we observe that the Board was the first tribunal to assume jurisdiction to determine jurisdiction with

respect to plaintiff's injuries arising from the events of April 1964.[14] As we have already pointed out (see fn. 13, *ante*), the Board found that plaintiff's reaction to the events of April 1964 and her ensuing psychiatric disturbance were directly related to the original industrial injury in such manner as to be compensable. It is not clear to what extent the Board found the April 1964 injuries to be an aggravation of the original industrial injury and to what extent an infliction of a new injury, but in any event the Board considered the injuries to be cognizable under the workmen's compensation laws. The Board's findings and award of August 20, 1964 have become final (Lab. Code, §§ 5803, 5804) and its determination is final as to coverage and jurisdiction.

It is manifest that since this determination was res judicata in any subsequent proceedings in the superior court between the *same* parties, it would have prevented plaintiff from bringing a common law action for damages against her employer (Sun Val Market) on the same cause of action had she attempted to do so. For the same reason and upon the authorities already discussed, plaintiff cannot bring such an action against the employer's insurance carrier (here Truck) where in its performance of the acts complained of the carrier is not "really stepping from its role as insurer." (*State Comp. Ins. Fund* v. *Superior Court* (*Breceda*), *supra*, 237 Cal.App.2d 416, 424; see also *Noe* v. *Travelers Ins. Co.*, *supra*, 172 Cal. App.2d at pp. 735-736 and *Hazelwerdt* v. *Industrial Indem. Exchange*, *supra*, 157 Cal.App.2d at pp. 764-766.)

However, we have held that as to the second, fourth and fifth counts defendant Truck did *not* remain within its proper role as a compensation carrier. Thus, under the facts pleaded in those intentional torts counts, Truck was and is actually a "person other than the employer" (Lab. Code, § 3852), against whom plaintiff is entitled to bring a civil action for damages. We now conclude that this holding precludes the operation of the principles of res judicata set forth above.

No reported case has to our knowledge decided this precise question. However, this court dealt with a similar problem in *Duprey* v. *Shane*, *supra*, 39 Cal.2d 781. In *Duprey*, as has been discussed (see text accompanying fn. 12, *ante*), the plaintiff, a nurse, sustained an industrial injury

[14]The Board first assumed jurisdiction of plaintiff's initial industrial injury of March 31, 1960, upon the filing of plaintiff's application for adjudication of claim on June 11, 1963. This initial injury was, of course, entirely distinct from the subsequent injuries in 1964, which constituted a separate invasion of a primary right to be free from personal injury and gave rise to a new cause of action. Since only the latter injuries are involved in the proceedings before both tribunals, we are not concerned with plaintiff's 1960 industrial injury in this discussion.

while in the employ of the defendant, a chiropractor. He and one of his chiropractor-employees undertook to treat the plaintiff for the injury and in so doing aggravated it. She sought and received from the Board[15] workmen's compensation benefits for the original injury and also its aggravation. Thereafter, she brought against her chiropractor-employer and his employee an action for damages for malpractice. The defendants contended that such action would not lie because the Board had exclusive jurisdiction over all of the plaintiff's injuries and its award constituted a determination which was res judicata of the issues in the civil action.

We noted that the Board had exclusive jurisdiction not only over plaintiff's claim against the employer with respect to the initial industrial injury, but also over her claim against the employer or his insurance carrier for further recovery because of the aggravation of that injury by the negligence of the attending physician. We also took cognizance of the settled rule that where the attending physician is negligent in the treatment of an industrial injury and causes a new injury, " 'the employee may not only sue the employer [or the carrier] before the commission, but may also sue the *doctor for malpractice.*' " (*Duprey* v. *Shane, supra,* 39 Cal.2d at p. 790; italics added.) Thus we faced in *Duprey* the precise question of whether the plaintiff-employee was entitled to sue at common law her chiropractor-employer.

We rejected in *Duprey* the defendant's contention of res judicata and upheld the plaintiff's entitlement to bring a civil action. We reasoned as follows: " '[T]he employer-doctor is a "person other than the employer" within the meaning of section 3852 of the Labor Code above quoted. In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to [ ] [plaintiff] was that of doctor and patient.

" '[ ] [Defendants] say that such a result can be reached only on the theory that Dr. Shane had a dual legal personality—that is, Dr. Shane the employer, and Dr. Shane the doctor, and contend that the law frowns upon the creation of such dual legal personalities, citing such cases as *Walker* v. *City & County of San Francisco* [1950], 97 Cal.App.2d 901 [219 P.2d 487], and *Park* v. *Union Mfg. Co.* [1941], 45 Cal.App.2d 401 [114 P.2d 373]. It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved—Dr. Shane— bore towards his employee two relationships—that of employer and that

---

[15]Although the Board was then the Industrial Accident Commission, we shall for convenience continue to use the term "Board."

of a doctor—there should be no hesitancy in recognizing this fact as a fact. Such a conclusion, in this case, is in precise accord with the facts and is realistic and not legalistic.' " (*Id.* at p. 793.)

The facts pleaded in the case at bench are analogous. Here, like the defendant chiropractor in *Duprey,* defendant Truck is invested with a dual legal personality for purposes of section 3852. While acting in its normal role as an insurer and performing its proper role within the compensation scheme, Truck, like Dr. Shane, stood in the position of plaintiff's employer and cannot be deemed a "person other than the employer." But, as discussed heretofore, when Truck committed intentional torts, it stepped out of its proper role as insurer and became a "person other than the employer," in much the same way as Dr. Shane stepped out of his role as employer, and became an attending doctor—a "person other than the employer." We conclude therefore that just as the defense of res judicata was unavailing in *Duprey* v. *Shane* because the subsequent civil action was *not between the same parties,* so here it is unavailing for the same reason, as to plaintiff's second, fourth and fifth counts.

Nothing that we have said should be construed to be an approval of a double recovery. In the event that plaintiff obtains a judgment, defendant shall be entitled to a set-off, to the extent that it has already paid compensation to plaintiff in proceedings before the Board for the subsequent injuries which are the subject of the instant action, together with medical and other benefits relating only to such injuries. (Cf. *Duprey* v. *Shane, supra,* 39 Cal.2d at p. 796; *Heaton* v. *Kerlan* (1946) 27 Cal.2d 716, 719, 722-723 [166 P.2d 857].) In other words, any set-off should be limited to the amount of compensation benefits which the employer or insurance carrier was required to pay because of the aggravation of the original industrial injury produced by the intentional torts.

 Our resolution of the issue of res judicata also disposes of Truck's connected claim that plaintiff's acceptance of workmen's compensation benefits for the April 1964 injuries constituted an election of remedies. Citing *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451 [70 Cal.Rptr. 710] and *Carter* v. *Superior Court* (1956) 142 Cal.App.2d 350 [298 P.2d 598], Truck argues that plaintiff "had alternative remedies and she elected one of those remedies in consequence of which the Superior Court is denied jurisdiction to proceed further." *Azevedo* and *Carter* each involved a work-related assault by an employer upon an employee. In each case the employee commenced proceedings before the Board for compensation benefits and thereafter brought a civil action for damages.

*Carter,* recognizing the holding of this court in *Scott* v. *Industrial Acc.*

*Com., supra,* 46 Cal.2d 76, held that the plaintiff-employee had first submitted the question of jurisdiction to the commission (herein, the Board). Thus the commission determined that "the injury occurred by a risk or condition incident to Greenwood's employment and that the injury was one falling within the exclusive jurisdiction of the commission; and being final, it is res judicata of that fact . . . ." (*Carter* v. *Superior Court, supra,* 142 Cal.App.2d at p. 356.) Thus, although the court spoke in terms of "choice of remedies" (*id.* at p. 355) and declared that the employee by seeking and accepting benefits before the commission had "made a binding election of a remedy" (*id.* at p. 355), it clearly was not invoking the traditional doctrine of election of remedies but merely using this language in the context of *Scott. Carter,* in the light of *Scott,* did not give the employee an election of remedies but only the privilege of seeking the initial tribunal. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1972) § 22.03(3), pp. 22-33, 22-34; Note: *Azevedo* v. *Abel: Denial of Employee's Right to Sue His Employer For an Intentional Tort* (1970) 21 Hastings L.J. 683, 684-691.) To the extent that *Carter* is inconsistent with the views herein expressed, it is disapproved.

*Azevedo,* upholding an award of the Board and a dismissal of the civil action, rejected the employee's claim that in cases of the employer's assault upon the employee there are "a concurrent pair of liabilities and concurrent jurisdiction on the part of the two tribunals in this limited class of cases, the ultimate damage award to be diminished by the compensation award." (*Azevedo* v. *Abel, supra,* 264 Cal.App.2d at p. 458.) The court held that in such cases the employee cannot bring an action at law for damages.

*Azevedo* and *Carter* are clearly distinguishable from the instant case, since in both of those cases the employee sought to maintain an action at law for the *initial* industrial injury against the *employer,* the *same* party against whom he had already brought proceedings for compensation benefits before the Board. In the case at bench, plaintiff did not seek damages at law for the *initial* industrial injury, but for injuries subsequently occurring from entirely distinct events. Nor, as to the second, fourth and fifth counts, is she seeking damages from the same *party,* because defendant Truck is as to those counts a "person *other* than the employer."

The judgment (order of dismissal) dated February 5, 1970, and filed February 27, 1970, as to defendants Farmers Insurance Group and Robert A. Wishman, is reversed as to all counts of plaintiff's second amended complaint, and as to defendant Truck Insurance Exchange is affirmed as to the first and third counts thereof and reversed as to the second, fourth

and fifth counts thereof. The judgment (order of dismissal) dated February 6, 1970, and filed February 27, 1970, as to defendant William R. Baker, is reversed as to all counts. The cause is remanded to the trial court with directions to overrule the demurrers to the extent and in conformity with the views herein expressed and to allow defendants a reasonable time within which to answer.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., and Burke, J., concurred.