**Laurie A. HASTINGS, individually and as trustee for the heirs and next of kin of Roy J. Carlson, deceased, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES, d.b.a. Associates Indemnity Corporation, Respondent.**

No. C8–86–1927.

Court of Appeals of Minnesota.

April 28, 1987.

David B. Morse, Minneapolis, for appellant.

Mark L. Scholle, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

Laurie Hastings, widow of Roy Carlson, brought an action against Fireman's Fund Insurance Co. alleging that the insurer terminated her husband's workers' compensation benefits in bad faith and precipitated emotional stress, which resulted in his death. The trial court granted respondent's motion for summary judgment and held that the claim, as a matter of law, fell within the domain of the Workers' Compensation Act and that the insurer's action did not rise to the level of "severe and outrageous" conduct, which could justify a common law action against the insurer. We affirm.

## FACTS

Roy Carlson suffered a work-related lower-back injury on September 28, 1978. He was out of work for two months, returned briefly, but never worked again after January 2, 1979.

Carlson received workers' compensation benefits from Fireman's Fund for his injury. He was diagnosed as having a 20% permanent disability of the spine and referred by the insurer for help in rehabilitation and job placement.

Dr. W.H. Burnham, an orthopedic surgeon, treated Carlson for his injury. Dr. Burnham's last examination of Carlson was in March, 1980, but he corresponded with Fireman's Fund on at least two subsequent occasions. On May 6, 1980, he wrote that a CT scan and electromyogram indicated a "neuritis which is an additional problem to the back disability." On November 25, 1980, Burnham stated a somewhat different conclusion.

On the basis of the CT scan and the electromyelogram [sic] * * * Mr. Carlson is suffering from a neuritis, which was probably independent of his back problem and which was likely not caused by injury at work. * * * I do not believe that Mr. Carlson was disabled for work on the basis of his work related injury, although I cannot state that he is able to work, considering the apparent neuritis

of his left leg. Treatment would depend largely on further neurologic evaluation.

On December 4, 1980, Fireman's Fund terminated Carlson's workers' compensation benefits based on Dr. Burnham's letter. Prior to termination, the insurer had paid medical expenses, temporary total disability, and permanent partial disability.

At the time of termination, Carlson, a 53 year old man without a high school diploma, was still unable to work. Rehabilitation and job placement people stated he would have difficulty finding work. Carlson, overweight and suffering from hypertension, was anxious about his future prospects and the sudden end to his benefits. He died from a brain stem hemorrhage January 11, 1981. Appellant's medical expert found no explanation for the hemorrhage, but testified stress was possibly a contributing factor.

## ISSUE

Did the trial court err in granting summary judgment as a matter of law on the grounds that the Workers' Compensation Act was the exclusive remedy?

## ANALYSIS

The trial court dismissed appellant's complaint with prejudice and granted respondent's motion for summary judgment under Minn.R.Civ.P. 56.03. The trial court relied on *Denisen v. Milwaukee Mutual Insurance Co.*, 360 N.W.2d 448 (Minn.Ct. App.1985), as foreclosing common law tort claims in connection with workers' compensation. The trial court found that the statutory scheme was an exclusive remedy and the insurer's termination of benefits did not amount to "severe and outrageous conduct" which could justify a tort action.

In *Denisen,* plaintiff suffered a back injury. She was ordered to appear for an adverse physical examination or suffer loss of compensation benefits. She missed the exam for health reasons and did not provide a timely excuse. Plaintiff, who was already depressed, suffered severe stress from the termination of benefits, which resulted in "trench mouth" and 40% permanent damage to her gums. This court re-

jected her common law tort claims, holding that workers' compensation was an exclusive remedy, subject, however, to a possible exception based on intentional conduct.

> [C]ourts have consistently refused to allow common law claims unless the employer's insurance carrier intentionally engages in outrageous and extreme conduct which cannot be justified by the needs of normal investigation or defense of claims.

*Id.* at 450.

The qualification of exclusivity was derived from *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972). In *Unruh,* the female claimant was manipulated by the insurer's investigator into a series of romantic dates where the claimant engaged in physical activities beyond her supposed ability. Claimant, confronted at her workers' compensation hearing with film of her activities at an amusement park, had a nervous breakdown. She was allowed to bring a common law action due to insurer's outrageous conduct.

The legislature has provided that workers' compensation is the exclusive remedy. Minn.Stat. § 176.031 (1980). The statute provides damages for insurer abuse of workers' compensation as part of the statutory scheme:

> Upon reasonable notice and hearing * * the division or upon appeal, the workers' compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:
>
> (a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or
>
> (b) unreasonably or vexatiously delayed payment; or
>
> (c) neglected or refused to pay compensation; or
>
> (d) intentionally underpaid compensation.

Minn.Stat. § 176.225, subd. 1 (1980). (In 1986, the legislature added: "(e) unreasonably or vexatiously discontinued compensation in violation of section 176.242.")

Although the 1980 version of § 176.225 does not explicitly provide a penalty in the event of unjustified discontinuance of compensation, it certainly falls within the ambit of (c). Fireman's Fund's refusal to pay, if found to be an abuse, falls within Minn. Stat. § 176.225 and does not give rise to a tort action. *See Denisen,* 360 N.W.2d at 450.

> If plaintiffs could avoid the jurisdictional limitation merely by alleging that the insurer had improperly refused to pay, the * * * exception would soon subsume the statutory mandate.

*Denisen,* 360 N.W.2d at 451.

The trial court did not err in granting respondent summary judgment.

## DECISION

The insurer's acts in terminating workers' compensation benefits was not outrageous and extreme so as to give rise to a common law tort claim. The workers' compensation statutory scheme provides the remedy.

Affirmed.