# DANIEL D'AMICO *v.* ACE FINANCIAL SOLUTIONS, INC., ET AL.
## (AC 30124)

Robinson, Alvord and Mihalakos, Js.

Argued November 12, 2009—officially released June 29, 2010

*Jennifer B. Levine*, with whom was *Harvey L. Levine*, for the appellant (plaintiff).

*Philip T. Newbury, Jr.*, for the appellee (named defendant).

*Opinion*

MIHALAKOS, J. The plaintiff, Daniel D'Amico, appeals from the summary judgment rendered by the trial court in favor of the defendant ACE Financial Solutions, Inc.,[1] on the plaintiff's claims of breach of contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, and violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., in the processing of his workers' compensation claim. The plaintiff claims that the court erred in rendering summary judgment on the basis of its determination that his claims were barred by the exclusivity provision of General Statutes § 31-284.[2] We conclude that the

---

[1] The plaintiff commenced this action against ACE Financial Solutions, Inc., and Berkley Administrators of Connecticut, Inc. (Berkley), by a complaint dated November 8, 2005. On July 31, 2008, Berkley filed a cross appeal. The plaintiff moved to dismiss Berkley's cross appeal for lack of a final judgment on August 5, 2008, which this court granted on November 5, 2008. This court also ordered, sua sponte, that the appeal proceed as to ACE Financial Solutions, Inc., only. Accordingly, we refer in this opinion to ACE Financial Solutions, Inc., as the defendant.

[2] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section

court properly rendered summary judgment in favor of the defendant and, accordingly, affirm the judgment of the trial court.[3]

The court's memorandum of decision reveals the following relevant facts and procedural history. "The plaintiff was employed as a correction officer by the state . . . at the Manson Youth Correctional Facility. On September 24, 1992, the plaintiff sustained injuries to his neck, back, shoulder, arm and hand while attempting to restrain an inmate. The plaintiff was also diagnosed as suffering from post-traumatic stress disorder, depression, fibromyalgia, hypertension and reflex sympathetic dystrophy of his right arm, and filed a claim for his injuries under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The state . . . accepted the plaintiff's expenses related to post-traumatic stress disorder and orthopedic injuries as compensable but did not accept as compensable expenses related to the plaintiff's claims of depression, fibromyalgia, hypertension, reflex sympathetic dystrophy of his right arm and treatment at an out-of-state inpatient program. Following a formal hearing on April 12, 1999, the workers' compensation commissioner ordered that the state provide benefits related to all but the hypertension claim. On May 18, 2000, the workers' compensation review board upheld the commissioner's order.

"Pursuant to [Public Acts, Spec. Sess., June, 2001, No. 01-07], the state . . . transferred the responsibility

shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[3] The plaintiff also claims that the court erred in granting the defendant's motion for summary judgment because (1) the defendant waived its claim of misjoinder and (2) there were genuine issues of material fact. Because our conclusion that the plaintiff's action against the defendant is barred by the exclusivity provision is dispositive, we need not address these claims.

for a number of workers' compensation claims, including the plaintiff's claim, to [the defendant].[4] [The defendant, a corporation involved in the business of financial derivatives], engaged [Berkley Administrators of Connecticut, Inc. (Berkley)] to administer the claims on [the defendant's] behalf. On November 19, 2003, Berkley filed notice with the workers' compensation commission that the plaintiff's psychiatric medication and psychiatric treatment would no longer be paid because it was considered palliative and no longer necessary. On February 2, 2004, Berkley filed an additional notice with the workers' compensation commission that treatment for the plaintiff's fibromyalgia would no longer be paid because it was palliative rather than curative treatment."

The plaintiff filed a nine count complaint dated November 8, 2005. The first five counts were against the defendant, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress and a violation of CUIPA and CUTPA. Counts six through nine were directed at Berkley and sound in breach of the implied covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, and violations of CUIPA and CUTPA. The defendant and Berkley filed their answers and special defenses on February 6, 2006.

On April 18, 2007, the defendant and Berkley filed a motion for summary judgment, arguing that the plaintiff's claims were barred by § 31-284 (a) and our Supreme Court's decision in *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 870 A.2d 1066 (2005), and also that the defendant was not a proper party

---

[4] Public Acts, Spec. Sess., June, 2001, No. 01-07, authorized the commissioner of administrative services to enter into a loss portfolio arrangement program for the purpose of transferring a group of workers' compensation claims to an independent third party.

to the action because it was Illinois Union Insurance Company (Illinois Union), not the defendant, that issued the workers' compensation policy under which the plaintiff claimed that he is entitled to benefits. The plaintiff filed an opposition to the motion for summary judgment on June 11, 2007, and a supplemental memorandum of law on March 13, 2008. The court heard argument on the motion on April 14, 2008, and, on July 11, 2008, granted the motion for summary judgment on all counts except that count that alleged intentional infliction of emotional distress against Berkley. This appeal followed.

On appeal, the plaintiff claims that the court erred in rendering summary judgment on the basis of its determination that his claim against the defendant was barred by the exclusivity provision, as construed by our Supreme Court in *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 487, and its progeny. Specifically, the plaintiff argues that the defendant is an "independent third party," as that term is used in General Statutes § 4a-25a,[5] and, thus, *DeOliveira* does not control this case. We disagree.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted

---

[5] General Statutes § 4a-25a provides: "The Commissioner of Administrative Services is authorized to enter into a loss portfolio arrangement program for the purpose of transferring a group of workers' compensation claims to an *independent third party*. Claims that qualify for transfer to such program shall be approved state employees' claims which require payment of future indemnity benefits and payment of medical benefits to certain disabled workers. Such program shall provide that the independent third party shall, as part of the assumption of liability, become responsible for the management and administration of the transferred liability and shall require such party to administer the individual workers' compensation claims in accordance with the Connecticut general statutes." (Emphasis added.)

show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . .

"On appeal, [this court] must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the defendant as a matter of law, our review is plenary . . . ." (Citation omitted; internal quotation marks omitted.) *Bragdon* v. *Sweet*, 102 Conn. App. 600, 603–604, 925 A.2d 1226 (2007).

Our review of the plaintiff's claim is governed by *DeOliveira*. In *DeOliveira*, the issue was whether Connecticut recognizes a cause of action against an insurer for bad faith processing of a workers' compensation claim. *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 490. The court observed that General Statutes §§ 31-278, 31-288 (b), 31-300 and 31-303 authorize a workers' compensation commissioner to provide financial remedies to reimburse an employee for costs associated with unwarranted delay in the receipt of workers' compensation payments. Id., 497. The court concluded that Connecticut did not recognize a cause of action against an insurer for such bad faith processing of a claim. Id., 499. Additionally, the court stated that "we must construe the exclusionary provision's prohibition on damages actions for injuries arising out of and in the course of . . . employment to include injuries arising out of and in the course of the *workers' compensation claims process.*" (Emphasis in original; internal

quotation marks omitted.) Id., 504. The court also recognized that "there could be an instance in which an insurer's conduct related to the processing of a claim, separate and apart from nonpayment, might be so egregious that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act." Id., 507.

Following *DeOliveira*, this court had the opportunity to decide whether an employee who has suffered an injury arising out of or in the course of her employment could bring a tort action against her employer to recover for infliction of emotional distress attributable to the employer's bad faith administration of the employee's compensation claim. *Yuille* v. *Bridgeport Hospital*, 89 Conn. App. 705, 874 A.2d 844 (2005). Even though *Yuille* concerned an employer, not an insurer, this court considered it "a distinction without a difference" and found that because the case was indistinguishable from *DeOliveira*, there was no cause of action against an employer for the bad faith processing of a workers' compensation claim of an employee. Id., 708.

In *Almada* v. *Wausau Business Ins. Co.*, 274 Conn. 449, 876 A.2d 535 (2005), our Supreme Court adjudicated the question of whether an injured worker could recover against a third party administrator for bad faith administration of the workers' compensation claim of the employee. The court concluded, as it did in *DeOliveira*, that the employee's remedies for the third party administrator's alleged bad faith processing of her workers' compensation claim were limited to those afforded under the act. Id., 457.

The plaintiff argues that the present case is distinguishable from *DeOliveira* and its progeny because the defendant is an "independent third party," not an insurer as in *DeOliveira*, an employer as in *Yuille* or

a third party administrator as in *Almada*. He further contends that the exclusivity provision of the act contemplates protection only for employers; see General Statutes § 31-284 (a) ("[a]n *employer* who complies with the requirements of subsection [b] of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment" [emphasis added]); and that the decision in *DeOliveira* cannot be extended to the facts of this case because no agency relationship exists between the plaintiff's employer and the defendant.[6]

Our Supreme Court has "consistently held that the exclusivity provisions of the [w]orkers' [c]ompensation [a]ct operate as a total bar to actions brought by employees against their employers for job related injuries. . . . This bar operates whether or not the employee actually collects compensation . . . ." (Citations omitted.) *Sgueglia* v. *Milne Construction Co.*, 212 Conn. 427, 433, 562 A.2d 505 (1989). As noted, *DeOliveira* recently construed the "exclusionary provision's prohibition on damages actions for injuries arising out of and in the course of . . . employment to include injuries arising

---

[6] To the extent that the plaintiff argues that this case is one of those that the court in *DeOliveira* referred to as "so egregious" as to be outside the coverage of the exclusivity provision, we note that the court cited two cases as examples of that proposition. *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 507. In one, an agent of the insurer misrepresented his identity to the claimant, caused her to become emotionally involved with him and then induced her to engage in activities beyond her normal physical capabilities resulting in aggravation of her injuries and a physical and mental breakdown requiring hospitalization when she discovered the deceit. Id., citing *Unruh* v. *Truck Ins. Exchange*, 7 Cal. 3d 616, 620–21, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972). The other case involved an insurance carrier that allegedly insisted on a psychiatric examination with the deliberate intent that the plaintiff either commit suicide or drop her claim. *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 507, citing *Young* v. *Hartford Accident & Indemnity Co.*, 303 Md. 182, 193, 492 A.2d 1270 (1985). This case is not of the type the court had in mind when it carved out the exception for egregiousness.

out of and in the course of the *workers' compensation claims process.*" (Emphasis in original; internal quotation marks omitted.) *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 504. *DeOliveira* makes clear that an action for injuries arising out of and in the course of the workers' compensation claims process is barred by the exclusivity provision.

Although the exclusivity provision speaks solely in terms of employers, *DeOliveira*, *Yuille* and *Almada* have extended its protection to insurers and third party administrators, as well, in the context of the workers' compensation claims process. There can be no question that any injuries attributable to the defendant, as alleged by the plaintiff, arose out of and in the course of the workers' compensation claims process. The exclusivity provision, as interpreted by *DeOliveira* and its progeny, bars the plaintiff's action against the defendant, even if the defendant is an "independent third party," as alleged by the plaintiff. The court's granting of the defendant's motion for summary judgment was proper.

The judgment is affirmed.

In this opinion the other judges concurred.