[No. B009017. Second Dist., Div. Five. June 6, 1985.]

MARSHALL TEAGUE, Plaintiff and Appellant, v.
HOME INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Royce & Seaman, George R. Royce and John M. Inferrera for Plaintiff and Appellant.

Kurlander, Hix & Melby, Phyllis M. Hix and Barbara E. Dunn for Defendant and Respondent.

## Opinion

**FEINERMAN, P. J.**—A single issue is presented in this appeal. Did the trial court err in sustaining a demurrer without leave to amend to appellant's first amended complaint for intentional infliction of emotional distress? Appellant contends that he pled facts sufficient to establish outrageous conduct on the part of a workers' compensation insurance carrier, thereby entitling him to a civil remedy outside the workers' compensation scheme.

### Background

On March 10, 1979, appellant sustained soft tissue back injuries and trauma to his brain after being struck on the head while investigating a possible burglary for his employer, Bel Air Patrol. Appellant developed a seizure disorder and severe psychiatric problems after the incident and filed a workers' compensation claim with the Bel Air Patrol workers' compensation insurance carrier, Home Insurance Company (Home).

On June 29, 1983, appellant filed an action against corporate defendants Home and Telestar Investigations (Telestar) and against Does 1 through 50, inclusive, for intentional infliction of emotional distress. The trial court sustained Home's demurrer with leave to amend on the ground that appellant's complaint was not sufficient to state a cause of action independent of the jurisdiction of the Workers' Compensation Appeals Board.

In his first amended complaint, appellant alleged that during the pendency of his workers' compensation claim Home became aware of the fact that appellant's job-related injuries caused a severe psychiatric and seizure disorder which could be triggered by surveillance activity on the part of Home or its agents. Appellant maintained that such surveillance could have no legitimate purpose because his particular type of injury could not be visually verified or impeached. Appellant also claimed that Home was aware that delays in providing medical treatment, medication or payment of benefits could precipitate psychotic episodes and/or seizure activity.

Appellant's first amended complaint further stated that, although Home knew that appellant was particularly susceptible to emotional distress, Home engaged in outrageous conduct during the calendar year of 1983, which included the following: First, Home hired Telestar (a defendant below but

not a party to this appeal) to surveil appellant with the purpose of harassing and humiliating him. Telestar's actions included the illegal entry into the garage area of appellant's residence and the unlawful entry into his vehicle. Second, Home refused to pay benefits even after all workers' compensation appellate processes had been resolved in appellant's favor.

As a result of Home's payment delays and Telestar's investigative techniques, appellant asserts that his psychological and physical condition worsened and that he required hospitalization. His prayer for relief requests both general and exemplary damages, as well as pre- and postjudgment interest and costs.

On March 27, 1984, the trial court sustained Home's demurrer to appellant's first amended complaint and an order of dismissal was entered.

## DISCUSSION

The California Workers' Compensation Act encompasses an elaborate scheme for adjudicating claims by employees against employers for injuries "arising out of and in the course of" their employment. (Lab. Code, § 3600.) Although the employee's right to compensation under Labor Code section 3600 is generally his exclusive remedy (Lab. Code, § 3601), he may sue "any person other than the employer" for damages "proximately resulting" from such an injury. (Lab. Code, § 3852.) However, workers' compensation insurance carriers are usually shielded from such third party liability because they are statutorily defined as having employer status. (Lab. Code, § 3850.)

Appellant contends that Home should be denied protected status because its conduct was so outrageous as to take it out of the workers' compensation scheme. He alleges that Home's conduct was outrageous in three respects: First, appellant asserts that delays in payment of benefits and in provision of medical treatment and medication led him to experience psychotic occurrences and/or seizure activity. Second, he alleges that the nature of appellant's injury did not lend itself to verification by investigative observation and that Home's surveillance could therefore have had no legitimate purpose. Third, appellant claims that Home's investigation included an unlawful entry into the garage area of his residence and illegal entry into his vehicle with knowledge that such activity would likely cause severe emotional and mental distress.

Case law uniformly rejects appellant's first-stated grounds for circumventing the workers' compensation scheme. Mere assertions of delay in the payment of benefits or the providing of medical treatment do not de-

scribe conduct which is deemed outrageous and extreme. (See, e.g., *Argonaut Insurance Co.* v. *Superior Court* (1985) 164 Cal.App.3d 320, 325 [210 Cal.Rptr. 417]; *Cervantes* v. *Great American Ins. Co.* (1983) 140 Cal.App.3d 763, 768-771 [189 Cal.Rptr. 761].) Moreover, "[f]ailure to pay benefits is a class of wrongs clearly within the contemplation of the workers' compensation system as the Legislature provided a specific penalty and remedy for such conduct in [Labor Code] section 5814 . . . ." (*Droz* v. *Pacific National Ins. Co.* (1982) 138 Cal.App.3d 181, 187 [188 Cal.Rptr. 10].)[1]

■  Second, the investigation of claims is an important function of workers' compensation insurance carriers. "Like safety inspections or the providing of medical care, such nonmedical investigation constitutes a service 'inextricably interwoven' with the insurer's status. . . . [T]he *nature* of the insurer's role is not changed merely because its usual function may have been performed negligently." (Original italics.) (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 627, 628 [102 Cal.Rptr. 815, 498 P.2d 1063].) While it may be true that appellant's injuries were primarily psychological rather than physical in character, we do not agree that the surveillance ordered by Home could have no legitimate purpose. The knowledge that surveillance might exacerbate a claimant's psychological or emotional problems does not preclude the use of reasonable surveillance techniques by compensation carriers.

■  Finally, the appellant maintains that surveillance was utilized in this case to harass and humiliate him and that the procedures carried out included the illegal entry of his vehicle and the garage area of his residence. He claims that such trespassory activity was intended to cause severe emotional and mental distress and should therefore subject Home to third party liability outside the workers' compensation scheme. (Lab. Code, § 3852.) Appellant relies for his argument on the holding in *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616.

In *Unruh,* the court held that an insurer who begins an intentionally deceitful investigation which causes injury to the person surveilled may be subject to an action at law by the employee for the insurer's intentional torts. (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 630.) The facts in *Unruh,* however, were far different than those in the case at bar. There, the insurance investigator befriended the employee, who had no knowledge of his investigative purpose, and invited the employee to become emotionally involved with him. Under guise of their apparently romantic

---

[1]Labor Code section 5814 provides that "[w]hen payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent."

relationship, the investigator took the subject to an amusement park and convinced her to undertake strenuous activity while his associate took sub-rosa pictures. Among other things, he caused the claimant to cross a rope bridge and a barrel bridge which the investigator violently shook and which aggravated the claimant's work-related injuries. The claimant learned of the ruse and deception practiced on her at the Workers' Compensation Appeals Board hearing and thereafter suffered a physical and mental breakdown requiring hospitalization. (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 621.)

In the instant case, the trial court specifically found that "surveillance is commonplace" and that the investigators "didn't do anything that [rose] to the level of . . . outrageous conduct in the Unruh case."[2] Thus, in its minute order of dismissal, the trial court stated that appellant failed to allege sufficient facts to show that the surveillance was " 'totally unnecessary to and far beyond the bounds of normal investigation and defense of a worker's claim.' "

While insufficient to state a cause of action for intentional infliction of emotional distress, however, we do find that appellant has set forth sufficient facts to establish another intentional tort which exceeds the bounds of acceptable investigative practice—that of trespass. As this court indicated in *Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196 [155 Cal.Rptr. 486], even when an employee may not maintain a civil action against his employer for intentional infliction of emotional distress, when it is accompanied by a physical disability, he may be entitled to a judgment for other intentional torts.[3] Here, we find that the intentional tort of trespass does not fall within the scope of behavior which may be reasonably expected of insurers. (See *Cervantes* v. *Great American Ins. Co., supra,* 140 Cal.App.3d at p. 768.) It "goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker." (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 630.)

As it is presently structured, appellant's complaint does not state a cause of action in trespass independent of his claim for intentional infliction of emotional distress. However, we believe that fairness dictates that he be given an opportunity to amend his complaint to state a cause of action for

[2]The trial court raised but did not address the possibility that because Home knew that appellant was susceptible to psychotic episodes, they owed him a special duty of care in their surveillance activities.

[3]In *Gates,* the court held that an employee was barred from maintaining a civil suit for damages for the intentional infliction of emotional distress and reversed a jury verdict favoring plaintiff on that cause of action. However, the court affirmed a companion judgment for conversion.

trespass, if he so elects. We reverse the order of dismissal and remand this matter for further proceedings in accordance with the opinions herein expressed. Each party shall bear its own costs.

Hastings, J., and Eagleson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 1985. Mosk, J., was of the opinion that the petition should be granted.