[No. A033188. First Dist., Div. One. June 5, 1987.]

LARRY G. APPL, Plaintiff and Appellant, v.
LEE SWETT LIVESTOCK COMPANY et al., Defendants and
Respondents.

---

## COUNSEL

Cain & Cain and Gene Cain for Plaintiff and Appellant.

Rogers, Joseph, O'Donnell & Quinn, Joseph W. Rogers, Jr., and Richard D. Shively for Defendants and Respondents.

---

## OPINION

**ELKINGTON, Acting P.J.**—Plaintiff Larry G. Appl (Appl) commenced an action for damages from work-related injuries against his employer, Lee Swett Livestock Company and Lee Swett individually (hereafter collectively, for convenience, Lee Swett Livestock Company), Enterprise Insurance Company, a workers' compensation insurance company, and Lawrence Margetich, its assistant claims manager. The defendant demurred generally to the first amended complaint, which demurrer was sustained without leave to amend. Judgment for the defendants of the action was thereupon entered. *Following* entry of the judgment Appl moved, under Code of Civil Procedure section 170.6, to disqualify the judge who had ruled upon the demurrer. And also, *following* entry of the judgment Appl moved for reconsideration of the court's ruling on the demurrer. The motion for reconsideration was denied, and the court imposed a sanction (under Code Civ. Proc., § 128.5) upon Appl's attorney for bad faith and frivolous tactics in making the motion.

There are two appeals before us. The first is taken by Appl from the judgment, and the second from the order imposing sanctions on his attorney.

Pending the appeals, they (the appeals) were for some reason dismissed, or withdrawn, as to defendants Enterprise Insurance Company and its assistant claims manager. The appeals have continued as to Appl's employer, Lee Swett Livestock Company.

We shall consider first Appl's appeal from the judgment.

His *contention* that the superior court judge who ruled upon the demurrer to his first amended complaint, and who caused judgment thereon to be entered, was disqualified, is manifestly invalid. ■ A motion to disqualify a judge, under Code of Civil Procedure section 170.6, is surely untimely when made *after* the judge has ruled upon the subject issue. We consider the argument no further.

As to Appl's principal appellate contention, we relate the factual-procedural context of the case as it appears from the record, including the first amended complaint of Appl, the admissions of his briefs, and oral argument of Appl on the appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal § 482, p. 472.)

In the course of his employment by Lee Swett Livestock Company, Appl suffered a work-related injury. In his verified original complaint he alleged that about three weeks after his injury he (*significantly*) "learned that the defendant Enterprise Insurance Company was the worker's compensation insurance carrier for the Lee Swett Livestock Company at the time of the plaintiff's injury." More than six months after his industrial accident and injury, he commenced the instant action, as above noted. Following commencement of the instant action, Appl applied to the Workers' Compensation Appeals Board for, and received, a workers' compensation award paid by defendant Enterprise Insurance Company.

(However, in spite of Appl's original complaint's allegation that soon after his industrial accident he "learned that the defendant Enterprise Insurance Company was the worker's compensation insurance carrier for the Lee Swett Livestock Company at the time of plaintiff's injury," he now insists, without explanation, that his erstwhile employer carried *no* workers' compensation insurance at the time of his work-related injury.)

A demurrer was sustained to Appl's original complaint, with leave to amend. And as noted, a demurrer to his first amended complaint was sustained, this time *without* leave to amend. Upon the latter ruling, the superior court had concluded that: "All of the causes of action that plaintiff pleads are within the [exclusive] jurisdiction of the Workers' Compensation Appeals Board; no facts plead[ed] take the causes of action outside the Appeals Board jurisdiction."

■ The issue of the appeal may reasonably be condensed to the question whether the Workers' Compensation Appeals Board had *exclusive* jurisdiction over the claim for relief of Appl's first amended complaint.

The gravamen of Appl's action may reasonably be stated as that, following his work-related accidental injury and as a proximate result thereof, his employer "maliciously, willfully, oppressively, and deliberately," with a "lack of good faith and fair dealing," and "extreme and outrageous behavior beyond the bounds of reason," terminated his employment, evicted him from his living quarters, failed to provide his needed medical attention, failed to report his work-incurred injury, failed to post notice of the name and address of its compensation insurance carrier, and, with intent to "defraud," told Appl that it carried no workers' compensation insurance. All of which, Appl alleged, caused him to suffer "severe emotional distress" and "additional and unnecessary expense."

We note initially that Appl's first amended complaint is *not* aided by his *conclusional* allegations that the employer acted "maliciously, willfully, oppressively, and deliberately" and "fraudulently," with a "lack of good faith and fair dealing," and with "extreme and outrageous behavior beyond the bounds of reason." ▮ A pleading "must allege facts and not conclusions" (*Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 537 [151 Cal.Rptr. 828]), and a demurrer does not admit "conclusions of fact" (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Cervantes* v. *Great American Ins. Co.* (1983) 140 Cal.App.3d 763, 767, fn. 2 [189 Cal.Rptr. 761]).

▮ And we here consider the claim that Appl's employer carried no workers' compensation insurance at the time of Appl's accident and injury. And: "The rule is that a defect in a verified complaint, by reason of an allegation which renders it vulnerable, cannot be cured simply by omitting the allegation without explanation in a later pleading. . . . Facts once alleged cannot be withdrawn from consideration by merely filing an amended pleading omitting them without explanation. Accordingly, the court was fully justified in examining and considering the original complaint." (*Lee* v. *Hensley* (1951) 103 Cal.App.2d 697, 709 [230 P.2d 159]; see also: *Wennerholm* v. *Stanford Univ. Sch. of Med.* (1942) 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *Williamson* v. *Joyce* (1902) 137 Cal. 151, 153 [69 P. 980]; *Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678, 682 [209 P.2d 825]; *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721, 724 [161 P.2d 677].)

Since no explanation is made for omission in the first amended complaint, of the subject verified factual allegation of the original complaint, we accept that allegation as a fact of the case, i.e., that Lee Swett Livestock Company had "secured the payment of compensation."

It seems profitable at this point to briefly discuss the history, purpose, and application of the Workers' Compensation Insurance Act (hereafter sometimes the Act), now codified as Labor Code sections 3200-6149.

The Act has its origin in the state's Constitution, article XIV, section 4, which, among other things, provides: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability . . . sustained by the said workers in the course of their employment, irrespective of the fault of any party [, and to make] full provision for adequate insurance coverage against liability to pay or furnish compensation; . . . to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government."

And: "Workmen's Compensation legislation rests upon the idea of status . . .; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured." *Cudahy Co.* v. *Parramore* (1923) 263 U.S. 418, 423 [68 L.Ed. 366, 369, 44 S.Ct. 153, 30 A.L.R. 532]; and see *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 277 [179 Cal.Rptr. 30, 637 P.2d 266].)

"The essentiality of the 'status' requirement is connoted in *Labor Code sections 3600 and 3601. . . .* [¶] The purpose of the Act was to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee. Liability under the Act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment and because the injury arose out of and in the course of the employment. If the duty flows solely from the employment relationship and the injury 'arises out of' and 'during the course of' that employment, then the recited policy considerations behind the exlusive remedy in workers' compensation *mandating that the employer be immune from tort liability* have viability." (Our italics; *Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d at p. 277.)

We are thus brought by the state's high court to the *employer's immunity provisions of Labor Code sections 3600 and 3601.*

*Labor Code section 3600* provides: "Liability for the compensation provided by [the Act], in lieu of any other liability whatsoever to any person *except as provided in Section 3706,* shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment. . . ." (Our italics.)

*Labor Code section 3601* states: "Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, *except as provided in Section 3706,* the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment . . . ." (Our italics.)

And the more recently enacted *Labor Code section 3602* provides: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, *except as specifically provided in this section and Sections 3706* and *4558,* the sole and exclusive remedy of the employee or his or her dependents against the employer . . . . (b) An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances: . . ." (Our italics.) There follow three such instances none of which, with section 4558, are even remotely apposite to the case before us.

And *Labor Code section 3706,* the principal exception to sections 3600, 3601 and 3602, as here relevant, states: "*If any employer fails to secure the payment of compensation, any injured employee . . . may bring an action at law against such employer for damages as if [the Act] did not apply.*" (Our italics.) Here, as noted, the employer had *not* failed to secure the payment of compensation.

And here, the first amended complaint alleged that the "conditions of compensation existed," i.e., an injury and disability in the course of Appl's employment. But for the statutes' here inapplicable exceptions, the exclusive remedy of Appl would appear to have been under the Act.

We consider other apposite judicial holdings.

■ "The clear implication is that . . . the 'exclusive remedy' limitation [of sections 3600 and 3601] and the provision for a penalty for the *willful*

*misconduct of the employer* [our italics] was a substitute for the previous right of an employee to bring an action at law." (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 472 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R. 4th 758].) The workers' compensation act covers the "willful misconduct" of the employer. (*Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal. App.3d 633, 639 [105 Cal.Rptr. 890].)

" '[T]he purpose of section 3601 is to make workmen's compensation the exclusive remedy of an injured workman against his employer.' " (*Saala* v. *McFarland* (1965) 63 Cal.2d 124, 130 [45 Cal.Rptr. 144, 403 P.2d 400].)

" 'Though it may be more opportunistic for a particular plaintiff to seek to circumscribe the purview of compensation coverage because of his immediate interest and advantage, *the courts must be vigilant to preserve the spirit of the act and to prevent a distortion of its purposes.*' " (Our italics; *Eckis* v. *Sea World Corp.* (1976) 64 Cal.App.3d 1, 7.)

"A policy of reciprocal concessions underlies the *general rule of exclusivity of remedy* [our italics]. In exchange for relatively swift and certain compensation for injury, the employee relinquishes the opportunity to recover the greater award which might be had from a jury. The employee is relieved of the burden of litigating claims for damages, while the employer can anticipate and pass on to consumers the lower cost of employee injuries which results from a statutorily prescribed measure of damages." (*Royster* v. *Montanez* (1982) 134 Cal.App.3d 362, 368 [184 Cal.Rptr. 560].)

Even where the employer's *fraud* is alleged, a civil action does not lie for a work-related injury or its exacerbation. "[T]he Legislature, in enacting the workers' compensation system, had intended to vest therein jurisdiction of all such work-related claims, notwithstanding pleading embellishments about fraud." (*United States Borax & Chemical Corp.* v. *Superior Court* (1985) 167 Cal.App.3d 406, 410 [213 Cal.Rptr. 155].) An employer may *not* "be brought into a court of law by an unhappy worker by merely alleging that the acts were intentional, deceptive, outrageous and fraudulent without alleging the specific conduct and how it was carried out, it would make shambles of the workers' compensation system now quickly and efficiently handled for the benefit of the injured workers by the Workers' Compensation Appeals Board." (*Everfield* v. *State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15, 19 [171 Cal.Rptr. 164].)

The Workers' Compensation Appeals Board has exclusive jurisdiction over an employer's *aggravation* of a worker's employment-incurred injury

as is here claimed. (*Fremont Indemnity Co.* v. *Superior Court* (1982) 133 Cal.App.3d 879, 881 [184 Cal.Rptr. 184]; *Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 541 [10 Cal.Rptr. 511]; *Buttner* v. *American Bell Tel. Co.* (1940) 41 Cal.App.2d 581, 585 [107 P.2d 439].)

And where the employer is guilty of "*serious and willful misconduct,*" Labor Code section 4553 provides the sanction of an increase of the compensation award by one-half. There are other such sanctions; see Labor Code sections 3760, 4600, 4601.5 and 5814. And failure of an employer to comply with an order of the Workers' Compensation Appeals Board may be punished as a *contempt.*

But yet another exception to the exclusive remedy provisions of sections 3600, 3601, and 3602 has been fashioned by the courts. It is where the employer is guilty "of the type of 'outrageous and extreme' conduct contemplated by *Unruh* [v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 (102 Cal.Rptr. 815, 498 P.2d 1063)]." (*Depew* v. *Hartford Acc. & Indemn. Co.* (1982) 135 Cal.App.3d 574, 577 [185 Cal.Rptr. 472].)

In *Unruh,* a workers' compensation insurance company's investigator, one Baker, "for the purpose of obtaining motion pictures of plaintiff, [a worker's compensation claimant,] 'did entice and cause the plaintiff to conduct herself in a manner beyond her usual and normal physical capabilities ....' In particular defendants enticed plaintiff to visit Disneyland with defendant Baker, in the unseen presence of [another investigator], where Baker caused plaintiff to cross a rope bridge and a barrel bridge and 'did wilfully and intentionally violently shake and disturb said bridges and the physical person of the plaintiff, and the defendants did at said place cause the plaintiff to engage in other activities so as to aggravate and injure the plaintiff.' These events were filmed by [the other investigator]. [¶] Plaintiff did not know at any time that she was under surveillance, that defendant Baker had misrepresented his capacity, or that [someone] was photographing her activities. At the instance and invitation of Baker, plaintiff had been caused 'to become emotionally interested' in him. [¶] [Thereafter] defendants ... exhibited at a hearing of the Industrial Accident Commission (now the [Workers'] Compensation Appeals Board) the motion pictures of plaintiff taken while she was under surveillance. Upon learning of 'the ruse and deception' practiced on her by defendants, plaintiff suffered a physical and mental breakdown requiring hospitalization." (7 Cal.3d at p. 621.)

The high court in *Unruh* concluded that "we cannot give our approval to such misconduct," and that such "evidence" perfidiously "procured" perverted the spirit and high purposes of the workers' compensation laws.

(7 Cal.3d at p. 630.) ■ Here we find the employer's conduct to fall far short of the reprehensibility found in *Unruh*. We hold that the exception of "extreme and outrageous conduct" is here inapplicable.

For yet another reason the superior court did *not* err.

It will be remembered from our earlier discussion that Appl had applied to, and had received from, the Workers' Compensation Appeals Board an award of compensation for his industrially caused injury, an award of which he makes no complaint. The instant action was commenced by Appl for damages for emotional distress caused by his employer's *intentional misconduct* in *aggravation* of the earlier occupational injury. But, as noted, an employer's *intentional misconduct* in *aggravation* of a work-incurred injury, lies within the exclusive jurisdiction of the Act. (See *Fremont Indemnity Co.* v. *Superior Court, supra,* 133 Cal.App.3d 879, 881; *Buttner* v. *American Bell Tel. Co., supra,* 41 Cal.App.2d 581, 585, *and Johns-Manville Products Co.* v. *Superior Court, supra,* 27 Cal.3d 465, 472, *Balido* v. *Improved Machinery Co., supra,* 29 Cal.App.3d 633, 639.)

For these several reasons, we are of the opinion that the trial court did not err in concluding that such grievances as Appl had against his employer lay within the *exclusive* jurisdiction of the Workers' Compensation Appeals Board under the Act.

■ We turn now to Appl's appeal from the order imposing monetary sanctions on his attorney for bad faith and frivolous tactics in the motion for reconsideration.

As has been noted, the sanction was imposed under Code of Civil Procedure section 128.5 which, as here relevant, states: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

The defendants had made the necessary showing of "reasonable expenses, including attorney's fees," incurred by them, and the superior court in its here contested ruling stated: "Counsel's motion for reconsideration is . . . frivolous and in bad faith. Stephen A. Cain [Appl's attorney] made a demand on the court at the hearing that the court has no obligation to respond to. Mr. Cain brings opposing counsel back to court with no justification, and wastes the court's time and the time of opposing counsel in dealing with this

motion for reconsideration. The court took into consideration Mr. Cain's substanceless motion for summary judgment, earlier denied, in analyzing whether Mr. Cain is acting frivolously and in bad faith. Please note that Mr. Cain has already filed, on November 1, 1985, his notice of appeal from the judgment resulting from the court's ruling here concerned, which was signed by an attorney in his office on October 29, 1985. Pursuant to Code of Civil Procedure § 128.5, Stephen A Cain, attorney for plaintiff, shall pay $680.00 in sanctions to the law firm of Gordon & Rees, attorneys for defendants Enterprise Insurance Company and Lawrence Margetich, and $680.00 in sanctions to the law firm of Rogers, Joseph, O'Donnell & Quinn, attorneys for defendants Lee Swett and Lee Swett Livestock Company."

We are of the opinion, from the entire record before us, that the superior court's sanction ruling was supported by substantial evidence. It accordingly must stand. (See *Grainger* v. *Antoyan* (1957) 48 Cal.2d 805, 807 [313 P.2d 848].)

The judgment and the order imposing sanctions are, and each is, affirmed.

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied July 6, 1987, and appellant's petition for review by the Supreme Court was denied August 26, 1987.