[No. C003472. Third Dist. Sept. 2, 1988.]

EMANUEL JABLONSKI et al., Plaintiffs and Appellants, v. ROYAL GLOBE INSURANCE COMPANY et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Mastagni, Holstedt & Chiurazzi, Mastagni, Holstedt, Chiurazzi & Curtis, Peter J. Stubbs and David P. Mastagni for Plaintiffs and Appellants.

Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, Duane W. Grummer and William A. Bogdan for Defendants and Respondents.

**OPINION**

**SPARKS, J.**—In *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], the California Supreme Court held that a compensation insurer forfeited its immunity from a civil suit by its deceitful conduct in investigating the workers' compensation claim of an injured employee. When the insurer commits such an intentional tort against the claimant, the court ruled, it steps outside the boundary of its proper role as an insurer, forfeits its status as an employer and hence its immunity under the Workers' Compensation and Insurance Act (Act), and thus becomes subject to an action at law like any other tortfeasor.

The question in this appeal is whether an insurer which commits an act of fraud by intentionally and deceitfully denying the existence of workers' compensation policy for the purpose of evading its contractual duty of paying compensation and defeating the legitimate claims of the injured employee similarly crosses the forbidden threshold and forfeits its immunity from a civil suit. We hold that it does.

Plaintiffs Emanuel and Dagmar Jablonski filed suit against defendants Royal Globe Insurance Company, Jones Brand & Hullen Insurance Services, Inc. and Michael Petkus alleging a virtual smorgasbord of causes of action. An amended complaint was thereafter filed and defendants successfully demurred to it. A second amended complaint was then filed. This time defendants' demurrer to it was sustained without leave to amend, and the action was dismissed. Plaintiffs appeal from the judgment of dismissal and we reverse.

## THE PLEADINGS

In their second amended complaint, plaintiffs alleged 12 causes of action against defendants.[1] The causes of action were for breach of contract, intentional infliction of emotional distress, breach of the covenant of good faith and fair dealing, fraud, abuse of process, intentional interference with a pending civil action, negligent interference with a pending civil action by spoliation of evidence, violation of Insurance Code section 790.03, interference with prospective advantage, negligent infliction of emotional distress, conspiracy and loss of consortium.

These various causes of action alleged in substance that defendant Michael Petkus, an individual, and defendant Jones Brand & Hullen (Jones), a business, were each retained by defendant Royal Globe Insurance Company (Royal Globe) as independent claims administrators, and each defendant was the agent of each remaining defendant, and always acting within the scope of the agency. Plaintiff was employed by Notres Lines as a truck driver. All of the defendants entered into a contract of workers' compensation insurance with Notres Lines prior to September 28, 1984. On this date plaintiff was injured within the course and scope of his employment. Defendants denied coverage, and "refused to avail themselves to the jurisdiction of the workers' compensation Appeals Board." Defendants knew plaintiff was covered by the policy, and they intended to cause him emotional distress. Defendants misrepresented the existence of coverage, delayed in acting on plaintiff's claim, and improperly investigated it. Defendants knew of documents constituting evidence in plaintiff's workers' compensation case and "concealed, lost, destroyed or otherwise disposed of" this evidence. Defendants also conspired to do all of these things. Dagmar Jablonski is plaintiff's wife, and she suffered a loss of consortium from the acts of defendants.

Whether plaintiff can sustain his burden of proving these facts at trial is a bridge yet to be crossed. ■ But for our purposes, because this appeal arises after the sustaining of a demurrer without leave to amend, we must "assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn therefrom." (*Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

---

[1] Because all of the causes of action except the 12th for loss of consortium involve only plaintiff Emanuel Jablonski, for convenience we shall refer to him in the singular as the plaintiff unless otherwise indicated.

## THE DEMURRER

Defendants demurred to each of the 12 causes of action of the second amended complaint on the grounds that they failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) They also demurred to some of the causes of action on grounds of uncertainty because plaintiff failed to allege any affirmative acts on behalf of the defendants constituting outrageous and extreme conduct. (Code Civ. Proc., § 430.10, subd. (f).) In support of their general demurrer, defendants contended that the Workers' Compensation and Insurance Act (Lab. Code, § 3200 et seq.) barred a civil suit against an employer's compensation carrier and its agents. Plaintiff countered by arguing that the causes of action against Jones and Petkus were not barred by the exclusive-remedy rule of that act because those defendants were persons "other than the employer" within the meaning of Labor Code section 3852. He further argued that his causes of action against Royal Globe and its agents were not barred under the act because that insurer forfeited its protection when it committed intentional torts against him. The trial court rejected plaintiff's arguments and sustained the demurrer without leave to amend.

On appeal plaintiff renews his contentions only as to the counts for fraud, intentional spoliation of evidence, unfair insurance practices and loss of consortium. As to these four causes of action he contends that the allegations of fraud and intentional destruction of evidence constitute intentional torts which legally transform all the defendants into "persons other than the employer" and hence render them amenable to civil suit. As a subsidiary issue, he further argues that the insurance carrier's independent claims administrators are not employers under the Act in all events and consequently are subject to civil suits even in those circumstances where the carrier is immune. Because we agree with the first contention, we have no occasion to resolve the conflict over the amenability of independent claims administrators to suit in circumstances where the insurer is protected by the exclusivity provisions of the Act.

## DISCUSSION

## I, II*

. . . . . . . . . . . . . . . . . .

---

* See footnote, *ante,* page 379.

## III

*Civil Suit Against the Compensation Carrier and Its Agents*

The California Workers' Compensation and Insurance Act (Lab. Code, § 3200 et seq., the Act) provides an elaborate scheme for the adjudication of claims by employees against their employers for injuries "arising out of and in the course of" their employment. (Lab. Code, § 3600.) Except as otherwise provided, liability for compensation provided by the Act is to be "in lieu of any other liability whatsoever . . . ." (*Ibid.*) The Legislature has included claims against workers' compensation insurance carriers within the exclusive workers' compensation scheme by defining the term "employer" to include insurers for purposes of third party suits. Thus, with exceptions not relevant here, only claims or rights of action for industrial injuries against persons other than the "employer" may be pursued by the injured employee outside of the workers' compensation arena. (Lab. Code, §§ 3850, subd. (b), 3852.) Thus, Labor Code section 3852 provides in relevant part: "The claim of an employee, including, but not limited to, any peace officer or firefighter, for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against *any person other than the employer.*" (Italics added.) In addition, Labor Code section 5300 defines the exclusive jurisdiction of the appeals board: "All the following proceedings shall be instituted before the appeals board and not elsewhere, except as otherwise provided in Division 4. [¶] (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto. . . ."

As the high court explained in *Unruh v. Truck Insurance Exchange, supra,* 7 Cal.3d 616, Labor Code "Section 3300 defines the word 'employer';[2] it is evident that such definition does not include an insurer. Thus, if the insurer is to be invested with the employer's immunity under section 3601, that immunity is to be derived from sections 3850 and 3852. Those sections, which fall within chapter 5, part 1, division 4, of the Labor Code, entitled 'Subrogation of Employer,' allow an employee to file an action at law for damages proximately resulting from his industrial injury against 'any person *other* than the employer.' However, since 'employer' is for these purposes defined by section 3850 to *include* an insurer, a literal reading of the section would negate an action at law against the insurer as a third party under section 3852. In other words, the insurer would retain immunity from lawsuit as the 'alter ego' of the employer." (*Id.,* at pp. 624-625, italics in original, citations omitted.)

---

[2] Labor Code section 3300 defines an "employer" as various public agencies and "[e]very person including any public service corporation, which has any natural person in service."

As we have just noted, under the subrogation part of the Act an employer "includes insurer as defined in this division." (Lab. Code, § 3850, subd. (b).) An insurer in turn is defined in relevant part as "any private company, corporation, mutual association, reciprocal or interinsurance exchange authorized under the laws of this State to insure employers against liability for compensation . . . ." (Lab. Code, § 3211.) Royal Globe is such an insurer.

■ Consequently, in order to state a cause of action against Royal Globe and its surrogate agents plaintiff must allege that the conduct in question was such that the workers' compensation carrier was no longer acting in the proper role of an insurer and thus forfeited its status as an employer and the mantle of protection against civil suits. (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616; see generally, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 65, pp. 623-624; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1988) Employer's Insurer as Third Party, § 23.02[2], pp. 23-16–23-20.)[3] In the words of the *Unruh* court, the issue is "whether the carrier which commits an intentional tort becomes a 'person other than the employer.'" (7 Cal.3d at p. 630.) When the compensation carrier merely acts negligently, the high court concluded, it was still acting within its role as an insurer and hence remains immune from civil suits at law. (*Ibid.*) "However, we are unable to conclude that a compensation insurer remains within its proper role as such, when, as in the instant case, through its agents or others employed by it, such insurer intentionally embarks upon a deceitful course of conduct in its investigations which causes injury to the subject of the investigation. . . . A deceitful investigation, in place of an honest one, frustrates the laudable objectives of the workmen's compensation law. Permitting the employee to maintain an action at law for the insurer's intentional torts will subserve these objectives but at the same time will not discourage the insurer from fulfilling its proper role in the compensation scheme." (*Ibid.*)

As the Courts of Appeal have generally read the *Unruh* decision, its holding is "based upon the specific conduct and the outrageous and extreme perfidious nature clearly described by the pleadings . . . ." (*Everfield* v.

---

[3] In *Unruh,* an insurance investigator placed an injured employee under surveillance and then caused her to become romantically involved with him. He took her to Disneyland where he encouraged her to cross a rope bridge and a barrel bridge. As she crossed, he shook the bridge violently and a colleague of his filmed the scene. The insurance company presented the film at the Board hearing to rebut the employee's claim of disability. The employee suffered an emotional breakdown and sued the insurer for negligence, assault and battery, intentional infliction of emotional distress, conspiracy and for punitive damages. The California Supreme Court held the employee had stated a cause of action for intentional infliction of emotional distress because the insurance investigator's conduct was so unique and outrageous as to fall well outside the normal scope of customary insurance investigation.

*State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15, 18 [171 Cal.Rptr. 164].)
As the *Everfield* court explained it, "[f]or injury in the course of employ-
ment, Labor Code section 3600 provides for the liability of an employer to
an employee in lieu of any other liability whatsoever. Section 3601 expressly
states that the right to recover under section 3600 is 'the exclusive remedy'
for injury of an employee against the employer. Within the general frame-
work and application of the workers' compensation laws, the employer's
insurance carrier stands in the same shoes as the employer. (§ 3850, subd.
(b).)" (*Ibid.*, fn. omitted.) But in *Unruh v. Truck Insurance Exchange,
supra,* 7 Cal.3d 616, the *Everfield* court went on to observe, the California
Supreme Court held "that where an employer's insurance carrier intention-
ally commits outrageous and extreme conduct totally unnecessary to and
far beyond the bounds of normal investigation and defense of a worker's
claim, such conduct removes the carrier from the protective insulation of
sections 3600 and 3601 which limit the injured worker to the remedies
provided under the Workers' Compensation Act and bar actions at law."
(*Ibid.*)

What is critical then is that acts be alleged in the complaint which are in
themselves "fraudulent, deceitful, outrageous, perfidious or so extreme or
abnormal as to fit in the class of misconduct considered in *Unruh*." (115
Cal.App.3d at p. 19.) The sham procedure of asserting the subjective char-
acterization that the acts of the carrier or its agents are "fraudulent, deceit-
ful and intentional" will not suffice. Otherwise, a disgruntled worker could
sue the compensation carrier in a court of law merely by alleging that the
acts in question were intentional, deceptive, outrageous and fraudulent
without alleging specific conduct and how it was carried out. These conclu-
sory pleadings, if permitted, "would make a shambles of the workers' com-
pensation system . . . ." (*Ibid.*) In short, there must be factual allegations
identifying the particular acts or circumstances which distinguish the tort of
outrageous conduct from the ordinary nonperformance of the insurer's
statutory duty to provide benefits. (*Id.*, at p. 20; see also *Appl v. Lee Swett
Livestock Co.* (1987) 192 Cal.App.3d 466, 470 [237 Cal.Rptr. 433].)

Thus we are called upon to determine whether under *Unruh* and its
progeny the intentional torts alleged in this case are such as to defrock the
carrier of its protective employer's garb. As we have noted, plaintiff chal-
lenges the court's ruling on the demurrer only as to four of his twelve causes
of action: count IV—fraud; count VI—intentional spoliation of evidence;
count VIII—unfair practices under Insurance Code section 790.03; and
count XII—loss of consortium. We consider each of those counts separate-
ly.

## A. *Loss of Consortium.*

■ Plaintiff Dagmar Jablonski's loss of consortium cause of action stands or falls with her husband's claims. (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 162-163 [233 Cal.Rptr. 308, 729 P.2d 743]; *Santiago* v. *Employee Benefits Services* [1985] 168 Cal.App.3d 898 at p. 906 [214 Cal.Rptr. 679].) It follows that if Emanuel's claims are barred, Dagmar's derivative cause of action for loss of consortium is similarly proscribed and vice versa. We turn then to Emanuel's claims.

## B. *Fraud.*

In the fraud count, plaintiff alleged that defendants, after being informed of his industrial injury and intention to pursue a claim for benefits, "represented to plaintiff that they were not liable to pay any monies to him or indemnify him for any losses because there was no workers' compensation coverage in existence at that time. At the time said representations were made by said defendants, said defendants were acting within the intent to deceive and defraud plaintiff and in bad faith. Said representations of material fact were false in that defendants, and each of them, were liable to plaintiff under the aforementioned contract, and the laws of the State of California." He further alleged that defendants "knew that said representations were false and fraudulent at the time they were made, and made such false and fraudulent representations for the purpose of inducing plaintiff to rely thereon to his detriment."

Plaintiff concedes that mere delay in payment or other conduct related to the botched processing of a compensation claim does not cause the insurer to lose its exclusivity defense. We accept the concession. "The authorities on this point are legion, unanimous, and summarized, e.g., in *Caplan* v. *Fireman's Fund Ins. Co.* (1985) 175 Cal.App.3d 146, 148 [220 Cal.Rptr. 549]; *Soto* v. *Royal Globe Ins. Co.* (1986) 184 Cal.App.3d 420, 429-431 [229 Cal.Rptr. 192]; *Cervantes* v. *Great American Ins. Co.* [(1983)] 140 Cal.App.3d 763 [189 Cal.Rptr. 761]." (*Continental Casualty Co.* v. *Superior Court* (1987) 190 Cal.App.3d 156, 159-160 [235 Cal.Rptr. 260].) As plaintiff recognizes, in the case of delayed or mishandled claims, the authorities have held that the worker's proper remedy is the penalty provisions afforded under Labor Code section 5814.[4]

---

[4] Labor Code section 5814 imposes a penalty for an unreasonable delay in the payment of compensation. It reads in relevant part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts."

But plaintiff argues that this is not a case of a delayed or mishandled claim. It is instead, he asserts, a case where the insurer's conduct has truly amounted to an intentional tort independently causing him injury. In such a case an action at law has been permitted. In support of this assertion, plaintiff relies upon *Teague v. Home Ins. Co.* (1985) 168 Cal.App.3d 1148 [214 Cal.Rptr. 773]. There the workers' compensation carrier hired an investigative agency to surveil an injured applicant for the alleged purpose of harassing and humiliating him. Among other things, the investigators illegally entered his garage at home and then unlawfully entered into his vehicle as well. The worker brought suit against the carrier and the investigating agency for intentional infliction of emotional distress. The trial court sustained the insurer's demurrer and dismissed the action. On appeal, the worker argued that the insurer should be denied protected status because its conduct was so outrageous as to take it out of the workers' compensation scheme. This conduct consisted of delaying benefits, employing unnecessary surveillance and making an illegal entry into his garage and vehicle. The *Teague* court rejected those claims and ruled that the complaint was insufficient to state a cause of action for intentional infliction of emotional distress because the conduct did not rise to the level of outrageous conduct required by the *Unruh* case. But the court went on to hold that the worker had set forth sufficient facts to "establish another intentional tort which exceeds the bounds of acceptable investigative practice—that of trespass. As this court indicated in *Gates v. Trans Video Corp.* (1979) 93 Cal.App.3d 196 [155 Cal.Rptr. 486], even when an employee may not maintain a civil action against his employer for intentional infliction of emotional distress, when it is accompanied by a physical disability, he may be entitled to a judgment for other intentional torts. Here, we find that the intentional tort of trespass does not fall within the scope of behavior which may be reasonably expected of insurers. It 'goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker.' " (*Id.,* at p. 1153, citations and fn. omitted.)[5]

By a parity of reasoning, plaintiff argues that fraud cannot be a part of the normal activities of the insurer. In his words, an "insurance carrier and its claims administrators which fraudulently conceal, with intent to deceive the existence of coverage and then intentionally destroy evidence supporting the existence of coverage, are clearly not only stepping outside of their proper role, but acting in a manner diametrically opposed to such role, and undermining rather than promoting Worker's Compensation, with its objective of simple and speedy compensation for the injured worker."

---

[5] In the cited *Gates* case, the reviewing court upheld a jury award in favor of a fired employee in an action at law for conversion against his former employer where the employer wrongfully confiscated his personal belongings from his desk upon his discharge. (*Gates,* 93 Cal.App.3d at pp. 206-207.)

Defendants acknowledge that an insurer may be sued in civil courts where its acts are so extreme and outrageous that it goes beyond the normal role of an insurer in processing or paying claims. But they would distinguish *Teague* and *Gates* on the ground that "[t]hough these were intentional torts, they were in no way involved with the processing of claims or the payment of benefits. Rather, invasion or theft of personal property falls outside the ordinary processing or payment of claims." They argue that the official reports are rife with instances where employees have sought civil jurisdiction by couching their benefits claim in terms of other torts. (See e.g., *Soto* v. *Royal Globe Ins. Co., supra,* 184 Cal.App.3d 420; *Cervantes* v. *Great American Ins. Co., supra,* 140 Cal.App.3d 763; *Fremont Indemnity Co.* v. *Superior Court* (1982) 133 Cal.App.3d 879 [184 Cal.Rptr. 184]; *Everfield* v. *State Comp. Ins. Fund, supra,* 115 Cal.App.3d 15. See also *Schlick* v. *Comco Management, Inc.* [1987] 196 Cal.App.3d 974 [242 Cal.Rptr. 241]; *Santiago* v. *Employee Benefits Services, supra,* 168 Cal.App.3d 898.) As defendants read the cases, "where a willful and intentional delay or failure to pay benefits is coupled with a claim of bad faith, intentional infliction of emotional distress, breach of the covenant of good faith and fair dealing, loss of consortium, abuse of process, or the intentional tort of conversion of insurance benefits, the courts have consistently ruled against civil jurisdiction."

It is true that the mere coupling of an intentional tort to other causes of action centering on delayed or refused benefits has repeatedly been found insufficient to overcome the exclusive remedy provisions of the Act. The Courts of Appeal have consistently "held that when the gravamen of the complaint is the delay of or refusal to make payment of a compensation award, the exclusive jurisdiction is with the Appeals Board, and the remedy of Labor Code section 5814." (*Santiago* v. *Employee Benefits Services, supra,* 168 Cal.App.3d at p. 902.) Thus, the "assertion that *Unruh* holds a cause of action is stated by an injured employee for any intentional tort is incorrect. The Supreme Court held that when an insurer commits intentional acts that are so outrageous and extreme it no longer remains within its proper role, it becomes liable in an action at law as a ' "person other than the employer." ' In order to fall within this exception to the Appeals Board's exclusive jurisdiction, allegations of reprehensible conduct are required." (*Id.,* at pp. 905-906, citation omitted.)

 The question then is whether defendants' fraudulent misrepresentation that no policy of insurance existed, made for the purpose of advancing the carrier's economic interest and defeating the injured employee's just entitlement, constitutes the type of outrageously reprehensible conduct which falls outside of the permissible boundary of

protected behavior by a compensation carrier.[6] We hold it does. Facially at least, this is not the kind of sham pleading which simply characterizes the mishandling of a claim as fraudulent. The kind of fraud alleged here is no different from, and in some respects is more aggravated than, the reprehensible conduct engaged in when the "insurer intentionally embarks upon a deceitful course of conduct in its investigations which causes injury to the subject of the investigation." (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 630.) This is unlike the delayed or refused payment cases in which the delay and refusal has been draped in tortious apparel to conceal its true form as an improperly processed claim case. Instead, the gravamen of this count is the insurer's outright fraud in concealing the very existence of a compensation policy so as to induce the injured employee not to seek the benefits to which he was entitled. ■ As the Court of Appeal explained in an analogous case, "[u]nder the authority of *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, we conclude that an insurer who, with a duty to disclose, fraudulently conceals from an employee the existence of an injury and its cause forfeits its 'alter ego' status and may be sued at law by that employee or by a third party defendant because 'such conduct goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker.' (*Id.,* at p. 630.)" (*Chase Chemical Co.* v. *Hartford Accident & Indemnity Co.* (1984) 159 Cal.App.3d 229, 239 [205 Cal.Rptr. 469].) ■ For the same reasons, we conclude that the complaint in this case alleged sufficient facts of outrageously deceitful conduct to remove it from the protection of the Workers' Compensation Act. Like the high court in *Unruh,* "[w]e cannot give our approval to such misconduct which tramples upon the employee's rights . . . ." (*Unruh,* at p. 630.) The trial court therefore erroneously sustained defendants' demurrer to the fraud count.[7]

---

[6] It is important to distinguish the type of reprehensible conduct on the part of a compensation carrier which will remove the protection of the Act from the type of extreme and outrageous conduct necessary for the tort of intentional infliction of emotional distress. For the emotional distress tort, "[c]onduct must be so outrageous as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].) To forfeit the workers' compensation immunity, the conduct of the insurer must consist of an intentional tort or other reprehensible acts which "goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker. . . . [and] frustrates the laudable objectives of the workmen's compensation law." (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 630, citations omitted.) As the text makes clear, the carrier's fraudulent denial of the existence of the policy for its own financial self interest is quintessentially an act of bad faith which exceeds the normal role of an insurer and necessarily defeats the objectives of the Act. (Cf. *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 769-770 [206 Cal.Rptr. 354, 686 P.2d 1158].) This, after all, is not a case of a legitimate dispute over coverage or premium payments or the lapse of a policy. It is instead, as pled by plaintiff and admitted by defendants' demurrer, a case of outright fraud.

[7] The demurrer to this fraud count was sustained on two grounds: First, because it failed to state a cause of action, and next on the ground that it was "uncertain because Plaintiffs fail to

## C. Unfair Practices.

In his brief plaintiff makes the passing remark that he "should also be permitted to continue under these circumstances with his action pursuant to Insurance Code Section 790.03(h)." That subdivision prohibits an insurance carrier from knowingly committing or performing with such frequency as to indicate a general business practice certain specified unfair claims settlement practices. Plaintiff's complaint alleged that Royal Globe denied coverage under the workers' compensation policy and committed other unfair practices. ■ But it has generally been held that "[t]he exclusive jurisdiction of the Appeals Board is not eliminated simply because [the injured workers] allege that [the insurer's] conduct violates the Insurance Code in addition to the Labor Code." (*Santiago* v. *Employee Benefits Service, supra,* 168 Cal.App.3d at p. 905; see also *Caplan* v. *Fireman's Fund Ins. Co., supra,* 175 Cal.App.3d 146, 147-148; *Denning* v. *Esis Corp.* [1983] 139 Cal.App.3d 946 at pp. 948-949 [189 Cal.Rptr. 118]; *Fremont Indemnity Co.* v. *Superior Court, supra,* 133 Cal.App.3d at p. 882.) Because plaintiff has elected not to attempt to distinguish these cases, we deem his election to be an implicit concession that the point lacks merit. And because he has failed to cite any authorities in support of his position or even to argue the issue, we also deem the point to be waived. (*Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712]; see generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, pp. 469-471.)

## D. Spoliation of Evidence.

■ Finally, plaintiff argues that his allegation of intentional spoliation of evidence suffices to remove his case from the exclusive provisions of the Act. Here plaintiff alleged defendants had knowledge of documents and other writings which constituted evidence in this case. Contrary to their fiduciary duty to preserve them, defendants intentionally destroyed this evidence and thus deprived plaintiff of the opportunity to present relevant evidence of their wrongful conduct.

*Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829], recognized that a cause of action, analogous to the tort of intentional interference with prospective business advantage, also exists for interference with a civil case by destroying evidence material to a pending products liability trial. (See generally, 5 Witkin, Summary of Cal. Law (9th ed. 1987)

---

allege any affirmative acts on behalf of Defendants constituting outrageous and extreme conduct." As our discussion in the text reveals, the fraudulent denial of the existence of a policy for the deceitful purpose of saving the carrier money and defeating the entitlements of the injured employee does allege outrageous and extreme misconduct. Consequently, both the general demurrer and the demurrer for uncertainty should have been overruled.

Torts, § 658, p. 750.) In *Smith,* the plaintiff was blinded when a wheel and tire flew off a passing van and crashed into the windshield of her car. The van was towed to the dealer who had earlier customized it with special wheels. The dealer agreed with plaintiff's counsel to maintain certain parts of the van pending further investigation. Thereafter, the dealer destroyed, lost or transferred the parts and thus made it impossible for plaintiff's experts to pinpoint the cause of the failure of the wheel assembly on the van. Plaintiff sued the dealer and alleged a cause of action for intentional spoliation of evidence. The trial court sustained the dealer's demurrer and plaintiff then petitioned the Court of Appeal for a writ of mandate. The reviewing court granted the writ. It held that a cause of action for the tort of intentional spoliation of evidence had been stated by allegations that the defendant dealer had intentionally destroyed physical evidence it had promised to preserve and the loss of that evidence significantly prejudiced plaintiff's opportunity to recover damages for her injuries.[8] "While intentional spoliation of evidence has not been recognized as a tort heretofore," the *Smith* court acknowledged, "we conclude that a prospective civil action in a product liability case is a valuable 'probable expectancy' that the court must protect from the kind of interference alleged herein." (151 Cal.App.3d at p. 502.)

As we have already noted, defendants have admitted the truth of all the factual allegations of plaintiff's complaint for the purposes of the demurrer. (*Coleman* v. *Gulf Ins. Group, supra,* 41 Cal.3d at p. 789, fn. 3.) In this cause of action plaintiff alleged, and defendants admitted, that they intentionally destroyed "relevant evidence touching upon the wrongful conduct of defendants."[9] For the evidence to be "relevant" to this civil action, it must relate to plaintiff's claim that defendants committed fraud such as to remove themselves from the immunity of the Act. An intentional destruction of evidence which would only affect an employee's claim under the Act can be redressed by the Workers' Compensation Appeals Board. In such an instance, it would simply be another case of a mishandled claim giving rise

---

[8] Another court has interpreted *Smith* in the context of the claimed negligent destruction of evidence as applying only where a defendant has induced reliance by a plaintiff on the maintenance of the evidence. (*Reid* v. *State Farm Mut. Auto. Ins. Co.* (1985) 173 Cal.App.3d 557, 579 [218 Cal.Rptr. 913].) The *Reid* court held that an automobile liability carrier had no duty "to preserve as evidence wrecked motor vehicles absent a specific request from the insured to do so." (*Id.,* at p. 580.)

[9] The seventh cause of action essentially repeated these allegations, and claimed defendants negligently concealed, lost, destroyed or otherwise disposed of the evidence. *Velasco* v. *Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874, 877-878 [215 Cal.Rptr. 504], held that a cause of action could also be stated for the negligent spoliation of evidence needed for prospective civil litigation. But it has been held that allegations of negligent spoliation of evidence are insufficient to deprive an insurer of the protections of the Act because it does not include intentional or outrageous conduct. (*Continental Casualty Co.* v. *Superior Court, supra,* 190 Cal.App.3d at p. 162, fn. 1.) Plaintiff prudently did not appeal from that part of the order sustaining the demurrer to the seventh count.

to penalties against the carrier in the workers' compensation proceeding. But when the intentionally destroyed evidence relates to a cause of action which is outside of the sphere of the workers' compensation system by virtue of the carrier's reprehensible conduct, then a civil action at law for intentional spoliation of evidence lies against the insurer and its agents. For it follows that if fraud on the part of the carrier is sufficient to take the offending insurer outside of the protection of the Act, then the intentional destruction of evidence of that fraud would for the same reasons cause the forfeiture of its immunity. Any other rule would permit an insurer to profit by the destruction of evidence of its own fraud. The deceitful destruction of documentary evidence of fraud no less than "[a] deceitful investigation . . . frustrates the laudable objectives of the workmen's compensation law." (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 630.) Shredding or otherwise intentionally destroying evidence of its own fraudulent behavior hardly falls within the proper role of a workers' compensation carrier. As the *Unruh* court explained, "[p]ermitting the employee to maintain an action at law for the insurer's intentional torts will subserve these objectives but at the same time will not discourage the insurer from fulfilling its proper role in the compensation scheme." (*Ibid.*)

Moreover, as the *Unruh* court further explained, a count for punitive damages against the insurer in that case was properly assertible in conjunction with the assault and battery and intentional infliction of emotional distress counts. (*Unruh,* 7 Cal.3d at p. 630.) By analogy, a count for spoliation of evidence of the fraud in conjunction with the fraud count should also be assertible against the insurer. Like punitive damages, the spoliation count is inextricably linked with the fraud count and logically rises or falls with that tort. For these reasons, we hold that the counts for fraud and spoliation of evidence, together with the count for loss of consortium to the extent that this loss derives from those two torts, stated causes of action against the insurer and hence were not demurrable. The trial court therefore erred in sustaining the general demurrer to those counts.

■ It is settled that a court commits reversible error when it sustains a demurrer without leave to amend as to the entire complaint when the defect relates only to a part of the complaint and at least one count is good. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 944, p. 379.) Since three of the causes of action are not defective, the order sustaining the demurrer cannot stand.

### DISPOSITION

The judgment is reversed and the cause remanded to the trial court with instructions to vacate its order sustaining the demurrers without leave to

amend and to enter a new and different order overruling the general and special demurrers as to the fourth (fraud), sixth (intentional spoliation of evidence) and twelfth (loss of consortium) causes of action. Plaintiffs shall recover their costs on appeal.

Evans, Acting P. J., and Marler, J., concurred.

On September 28, 1988, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied November 16, 1988.